# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP170 |
| COMPLETE TITLE: | J. Steven Tikalsky,<br>        Plaintiff-Appellant,<br>   v.<br>Susan Friedman a/k/a Susan Tikalsky, James<br>Tikalsky and Amended and Restated Donald and<br>Betty Lou Tikalsky Revocable Trust,<br>        Defendants,<br>Terry Stevens,<br>        Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 830,917 N.W.2d 232
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | May 23, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 7, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | Maria S. Lazar |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ZIEGLER, J. concurs (opinion filed). |
|   DISSENTED: | ROGGENSACK, C.J. dissents (opinion filed).<br>A.W. BRADLEY, J. dissents, joined by ABRAHAMSON,<br>J. (opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Dean P. Laing*, and *O'Neil, Cannon, Hollman, DeJong & Laing S.C.*, Milwaukee. There was an oral argument by *Dean P. Laing*.

For the plaintiff-appellant, there was a brief filed by *Mark J. Mingo* and *Mingo Yankala, S.C.,* Milwaukee; with whom on the brief was *Thomas C. Armstrong* and *Cabaniss Law*, Milwaukee. There was an oral argument by *Mark J. Mingo.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP170
(L.C. No. 2015CV1733)

STATE OF WISCONSIN : IN SUPREME COURT

J. Steven Tikalsky,

       Plaintiff-Appellant,

    v.

Susan Friedman a/k/a Susan Tikalsky, James Tikalsky and

Amended and Restated Donald and Betty Lou Tikalsky Revocable Trust,

       Defendants,

Terry Stevens,

       Defendant-Respondent-Petitioner.

**FILED**

**MAY 23, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 DANIEL KELLY, J. In a vigorous dispute over the distribution of Donald and Betty Lou Tikalsky's estate, J. Steven Tikalsky sued his sister, Terry Stevens, to obtain part of the inheritance she received from their parents. His Complaint contains a count labeled "constructive trust," which he deployed against his sister as a cause of action. Terry Stevens asks us whether a "constructive trust" may play that

role, and whether it may be used against those who have engaged in no inequitable behavior. We hold that a constructive trust is a remedy, not a cause of action. We also hold that, under the proper circumstances, a constructive trust may be imposed on property in the possession of one who is wholly innocent of any inequitable conduct. But because the Complaint in this case does not state a cause of action against Terry Stevens, nor assert any other grounds upon which a constructive trust could be imposed, the circuit court properly dismissed her from the case with prejudice. We reverse the court of appeals' decision reversing the circuit court.[1]

## I. BACKGROUND

¶2 Donald and Betty Lou Tikalsky (jointly, the "Tikalskys", and individually, "Mr. Tikalsky" and "Mrs. Tikalsky," respectively) jointly developed an estate plan that included the "Donald J. Tikalsky and Betty Lou Tikalsky Revocable Trust dated January 15, 1999" (the "1999 Trust"), as well as two associated wills (the "Wills"). The 1999 Trust and Wills provided that, when the Tikalskys had both passed, the bulk of their estate would be divided equally between their four children: J. Steven Tikalsky ("Steven"); Susan Friedman

---

[1] This is a review of an unpublished opinion of the Wisconsin Court of Appeals, Tikalsky v. Stevens, No. 2017AP170, unpublished slip op. (Wis. Ct. App. May 30, 2018), reversing the Waukesha County Circuit Court, the Honorable Maria S. Lazar, presiding.

("Susan"); Terry Stevens ("Terry"); and James Tikalsky ("James").[2]

¶3 A few years after execution of the 1999 Trust and Wills, the relationship between Steven and his parents started deteriorating. Eventually, they became estranged. A succession of amendments to the estate planning documents followed. In 2007, the Tikalskys executed the "Donald J. Tikalsky and Betty Lou Tikalsky Revocable Trust" (the "2007 Trust") as a replacement for the 1999 Trust.[3] Unbeknownst to Steven, the 2007 Trust provided that "J. Steven Tikalsky and his children are intentionally left out of this bequest or any bequest under this document." The Tikalskys amended the 2007 Trust in 2008; the amendment provided that "[i]t is the intent of Donald J. Tikalsky and Betty Lou Tikalsky that J. Steven Tikalsky be eliminated completely from this Trust or any Wills or the estate of the parties."[4] The Tikalskys amended and restated the 2007 Trust the final time in April of 2009. Mr. Tikalsky died approximately five months later, at which time Steven first

---

[2] Although referring to Mr. and Mrs. Tikalsky's children by their first names would ordinarily suggest an unwarranted familiarity, we do so here purely for the sake of clarity.

[3] While we generally cite from revisions to the Tikalskys' various trust documents, the Tikalskys also had executed individual wills. Our references to the Tikalskys' estate planning documents encompass their respective wills and trust documents unless context necessitates otherwise.

[4] Prior to the 2008 revision, the 2007 Trust provided that Steven would receive certain effects from Mr. Tikalsky's law office under certain circumstances.

3

learned that his parents had disinherited him and his family. Mrs. Tikalksy died in 2014, five years after her husband.

¶4    Steven believes two of his siblings, Susan and James, wrongfully caused his estrangement from his parents and his subsequent disinheritance.  His Complaint seeking redress for the latter injury named not just Susan and James as defendants, but Terry as well.[5]  Steven asserted nine claims:  (1) a request for a declaration that his parents lacked capacity to execute their respective testamentary documents; (2) a request for a declaration that Susan and James exercised undue influence over his parents in the drafting and execution of their testamentary documents;  (3)  intentional  interference  with  expected inheritance; (4) common law conversion/fraud; (5) statutory theft  in  violation  of  Wis.  Stat.  §§ 895.446  (2015-16)[6]  and 943.20;  (6)  unjust  enrichment;  (7)  civil  conspiracy;  (8) punitive  damages;  and  (9)  constructive  trust.   The  cardinal numbers in this list correspond to the numbered causes of action in Steven's Complaint.  As we trace the disposition of each of

---

[5] The Complaint also identifies the "Amended and Restated Donald J. Tikalsky and Betty Lou Tikalsky Revocable Trust by Susan Friedman a/k/a Tikalsky, Trustee" as a defendant in this action.  Steven filed an Amended Complaint, but it merely incorporates the original Complaint by reference. Consequently, the Amended Complaint comprises only new allegations and such paragraphs from the original that it amends, none of which are relevant to the matters we discuss here.  Therefore, we will refer only to the original Complaint in this opinion.

[6] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

these counts, we will maintain the cardinal number associated with each one to assist with clarity.

¶5    After his siblings moved for summary judgment, Steven voluntarily dismissed five of the Complaint's nine counts and acknowledged that "punitive damages" is not a cause of action.[7] Consequently, when the circuit court considered the summary judgment motion, the remaining claims were: (2) undue influence; (3) intentional interference with expected inheritance; and (9) constructive trust. Neither count two nor three alleged anything against Terry. The ninth count (constructive trust) referred to Terry only obliquely (inasmuch as she was one of the defendants):

> 143.    The funds that constituted a one-quarter share in Donald and Betty Lou's joint estate plan and were converted from Steven to the defendants were at all times after the conversion held by the defendants in constructive trust for Steven.
>
> 144.    Steven therefore now holds a beneficial property interest in all funds converted by the defendants. To the extent that the defendants spent or otherwise disposed of funds since the conversion beginning in or around April 8, 2009, a legal presumption exists that the funds spent came from monies other than those funds converted, and that any assets now in the defendants' possession are the subject of Steven's constructive trust to the maximum extent. In addition, the converted funds remain in

---

[7] Specifically, Steven voluntarily dismissed the following causes of action: (1) declaratory judgment regarding the Tikalskys' lack of testamentary capacity; (4) common law conversion/fraud; (5) statutory theft; (6) unjust enrichment; and (7) civil conspiracy.

constructive trust in the hands of all persons who knew or had reason to know the funds were converted.

¶6 The circuit court granted summary judgment against Steven on counts two (undue influence) and nine (constructive trust). With respect to dismissal of the claim for constructive trust, the circuit court said:

> Plaintiff Steven urges the Court to keep the constructive trust cause of action because the defendants were unjustly enriched and he is, therefore, entitled to the equitable remedy of a constructive trust. But as just noted by the Defendants, Plaintiff Steven voluntarily dismissed his unjust enrichment cause of action. So accordingly this cause of action for constructive trust is unsupported. Summary judgment dismissing this cause of action is granted.

¶7 The circuit court denied the summary judgment motion with respect to count three (intentional interference with expected inheritance), which left this as the sole remaining claim in the case. Because this count asserted nothing against Terry, the circuit court dismissed her from the lawsuit with prejudice. The order of dismissal was final as to Terry, and Steven appealed in due course.[8]

¶8 Steven named Terry as the only respondent; neither of his other siblings participated in the appeal in any capacity. The sole issue he presented to the court of appeals was the circuit court's dismissal of count nine (constructive trust) as against Terry. The "Statement Of The Issue" in his opening

---

[8] Count three (intentional interference with expected inheritance) remains pending in the circuit court against Susan and James.

6

brief asked: "Did the trial court err in dismissing Steven Tikalsky's cause of action seeking to impose a constructive trust on inheritance alleged to be wrongfully distributed to the defendant Terry Stevens, on the basis that Steven Tikalsky previously dismissed his cause of action for unjust enrichment?" The circuit court did err, the court of appeals said. Although the cause of action for unjust enrichment was gone, the court of appeals concluded that Steven had nevertheless "presented enough material on summary judgment to continue seeking a constructive trust." Tikalsky v. Stevens, No. 2017AP170, unpublished slip op., ¶2 (Wis. Ct. App. May 30, 2018). According to the court of appeals, a constructive trust remained as a "permissible equitable remedy" as to Terry because Steven alleged "some measure of untoward conduct on the part of Susan and James," and therefore "the factual claims undergirding the potential remedy of a constructive trust have been sufficiently established at this stage of the proceedings." Id. The court of appeals reversed the circuit court's order dismissing Terry from the case. Id.

¶9 We granted Terry's petition for review and now reverse the court of appeals.

## II. STANDARD OF REVIEW

¶10 We review the disposition of a motion for summary judgment de novo, applying the same methodology the circuit courts apply. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987); Borek Cranberry Marsh, Inc. v. Jackson Cty., 2010 WI 95, ¶11, 328 Wis. 2d 613, 785 N.W.2d 615

7

("We review the grant of a motion for summary judgment de novo . . . ."). While our review is independent from the circuit court and court of appeals, we benefit from their analyses. See Preisler v. General Cas. Ins. Co., 2014 WI 135, ¶16, 360 Wis. 2d 129, 857 N.W.2d 136.

¶11 "The first step of that [summary judgment] methodology requires the court to examine the pleadings to determine whether a claim for relief has been stated." Green Spring Farms, 136 Wis. 2d at 315. "In testing the sufficiency of a complaint, we take all facts pleaded by plaintiff[] and all inferences which can reasonably be derived from those facts as true." Id. at 317. And we liberally construe pleadings "with a view toward substantial justice to the parties." Id. (citing Wis. Stat. § 802.02(6)).

¶12 Under the second step of this methodology, "[i]f a claim for relief has been stated, the inquiry then shifts to whether any factual issues exist." Id. at 315. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2); see also Columbia Propane, L.P. v. Wis. Gas Co., 2003 WI 38, ¶11, 261 Wis. 2d 70, 661 N.W.2d 776 (quoting and applying Wis. Stat. § 802.08(2) (2001-02)).

### III. ANALYSIS

¶13 Terry says the circuit court correctly dismissed her from the case because the Complaint's only claim against her was for a constructive trust. This is a remedy, not a cause of action, she says, and the former may not be imposed in the absence of the latter. Steven says a constructive trust's legal taxonomy is of no moment; all that matters is whether the facts presented at summary judgment justify its imposition. The court of appeals agreed: "Though the parties spend considerable time debating whether constructive trust should be labeled a cause of action or a remedy, the answer to that question is largely immaterial." Tikalsky, 2017AP170, unpublished slip op., ¶7.

¶14 At the most basic level, Steven and the court of appeals are right. A complaint's success does not depend on accurate labeling. When we "examine the pleadings to determine whether a claim for relief has been stated," Green Spring Farms, 136 Wis. 2d at 315, we focus on the factual allegations, not the plaintiff's characterization of their legal significance.[9] Shelstad v. Cook, 77 Wis. 2d 547, 553, 253 N.W.2d 517 (1977) ("The theory of the plaintiff's case is not controlling. A plaintiff is bound by the facts alleged, not by his theory of recovery."). Not even misidentifying the cause of action will distract us from our independent assessment of the factual

---

[9] Our cases at various times have referred to "causes of action," "claims for relief," "theories of recovery," and "theories of liability." The terms are interchangeable.

allegations' legal consequences: "Neither any misstatement as to the precise nature of the wrong, as classible by common law names, or misstatement as to the kind of relief, or mere indefiniteness of statement are of any particular moment, as regards either sufficiency of cause or proper joinder of causes of action." Weinstein v. McCabe, 43 Wis. 2d 76, 80, 168 N.W.2d 210 (1969). See also Bieri v. Fonger, 139 Wis. 150, 153, 120 N.W. 862 (1909) ("If facts are stated constituting a good cause of action, though not the one the pleader intended, the pleading is good as against a general demurrer.").[10]

¶15 While Steven is right about our responsibility to look past labels, that does not mean we may treat causes of action and remedies as if they were the same thing. It just means we do not depend on the complaint to properly label the claims or to marshal the supporting facts into a logically cogent grouping. Even as we look past such formalities, we still distinguish between causes of action and remedies: "A cause of action is distinguished from a remedy which is the means or method whereby the cause of action is effectuated." Goetz v.

---

[10] This is not to say that labels cannot be helpful. Artfully drafted complaints are often organized and divided into conceptually distinct sections (e.g., "Parties," "Background Facts," "Causes of Action," etc.). Labeling the sections, as well as each individual cause of action, provides the court with convenient navigational markers.

State Farm Mut. Auto Ins. Co., 31 Wis. 2d 267, 273-74, 142 N.W.2d 804 (1966) (citation omitted).[11]

¶16 The distinction is important, especially at the summary judgment stage, because the court must determine whether the alleged facts comprise one or more causes of action. The substantive law governing a cause of action tells us what types of facts a plaintiff must allege. If the facts satisfy all of the constitutive elements of the claim, then the complaint has stated a good cause of action and the analysis may proceed to the second step in the summary judgment methodology:

> To state a claim upon which relief may be granted, the plaintiff's allegations must be informed by the theory of liability: "In sum, Twombly[12] makes clear the sufficiency of a complaint depends on [the] substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled. Plaintiffs must allege facts that plausibly suggest they are entitled to relief."

---

[11] See also Bernstein v. Bankert, 733 F.3d 190, 226 (7th Cir. 2013) (explaining that "[f]ederal law defines a 'cause of action' as 'a core of operative facts which give rise to a remedy[.]'" (brackets in original)); Eklund v. Evans, 300 N.W. 617, 618-19 (Minn. 1941) ("A cause of action is to be distinguished from the remedial rights arising therefrom and the remedies by which such rights are enforced. The cause of action is the legal wrong done to plaintiff by defendant. . . . The cause of action gives rise to a remedial right in favor of plaintiff against the defendant. This may be a right to specific performance, damages, injunction, or other relief. The remedy is the legal process by which the remedial right is consummated or satisfied.").

[12] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Springer v. Nohl Elec. Prod. Corp., 2018 WI 48, ¶35, 381 Wis. 2d 438, 912 N.W.2d 1 (quoting Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶31, 356 Wis. 2d 665, 849 N.W.2d 693). See also Val-Lo-Will Farms, Inc. v. Irv Azoff & Assocs., Inc., 71 Wis. 2d 642, 644, 238 N.W.2d 738 (1976) ("A cause of action is defined as an aggregate of operative facts giving rise to a right or rights termed 'right' or 'rights of action' which will be enforced by the courts." (citation and some internal marks omitted)). The cause of action is important, therefore, because it is the standard against which we measure the sufficiency of the complaint's factual allegations.

¶17 As we assay Steven's Complaint for a cause of action, we will proceed in two steps. First, we will determine whether "constructive trust" is a cause of action or, instead, a remedy. Second, we will review Steven's Complaint to determine whether the alleged facts, without regard to the labels, comprise a cause of action against Terry. The first step is necessary because if "constructive trust" is a cause of action, we need to identify its substantive elements so that, in the second step, we may determine whether the alleged facts satisfy its terms. If "constructive trust" is not a cause of action, however, then we must determine whether the Complaint nonetheless alleges a set of facts that comprises some other cause of action that might warrant imposition of a constructive trust on property in Terry's possession.

A. "Constructive Trust" Is A Remedy

¶18 Our first step begins with a brief word about the nature of constructive trusts. This will not only help illuminate its essential function (remedy versus cause of action), it will also lay the groundwork for understanding the circumstances in which it is available as against innocent owners. Conceptually, a constructive trust is an equitable device used to address situations in which the legal and beneficial interests in a particular piece of property lie with different people. Under proper circumstances——more about that later——the beneficial owner may ask the court to impose a constructive trust on the property. Hanson v. Valdivia, 51 Wis. 2d 466, 476, 187 N.W.2d 151 (1971) ("A constructive trust can only be applied to some specific res [that is, property] to which the party has acquired legal title."). The purpose of a constructive trust is to protect the beneficial owner against the legal owner: "Such a trust is implied by operation of law as a remedial device for the protection of a beneficial interest against one who . . . holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy." Bautista v. Schneider, 16 Wis. 2d 304, 312, 114 N.W.2d 449 (1962). In operation, a constructive trust reunites the beneficial and legal ownership interests in the same person. "By means of this device, the person equitably entitled to the

13

res becomes the cestui que trust[13] and may obtain possession from the wrongful holder, the constructive trustee." Richards v. Richards, 58 Wis. 2d 290, 297, 206 N.W.2d 134 (1973). See also Zartner v. Holzhauer, 204 Wis. 18, 21, 234 N.W. 508 (1931), overruled on other grounds by Glojek v. Glojek, 254 Wis. 109, 35 N.W.2d 203 (1948) ("It is well established that equity will afford relief at the suit of heirs to place them in possession of, or to quiet their title in, real property, the legal title to which is held by another, under circumstances giving rise to a constructive trust."); Restatement (Third) of Restitution and Unjust Enrichment § 55 cmt. b (2011) ("Constructive trust is a flexible device by which a court directs that property to which B holds legal title be transferred to A.").

¶19 With those general principles as background, we can recognize the first clue that a constructive trust is a remedy, not a cause of action: it functions as a means of repairing divided ownership interests, not as a means of determining whether they are in need of repair. It is for the "protection of a beneficial interest," Bautista, 16 Wis. 2d at 312 (emphasis added), as opposed to determining who owns that interest. It allows the beneficial owner to "obtain possession from the wrongful holder," Richards, 58 Wis. 2d at 297, but it does not establish the wrongfulness of the holding. It allows the court

---

[13] Black's Law Dictionary defines "cestui que trust" as "[s]omeone who possesses equitable rights in property, usu[ally] receiving the rents, issues, and profits from it; beneficiary." Cestui Que Trust, Black's Law Dictionary (10th ed. 2014).

14

to "direct[] that property to which B holds legal title be transferred to A," Restatement (Third) of Restitution and Unjust Enrichment § 55 cmt. b, but it does not provide the basis for ousting party B from his legal title. Constructive trust is a kinetic device that operates on a presupposed liability. And that leads us to the second clue, which is embedded in the way we talk about that presupposition.

¶20 We commonly say that "[a] constructive trust is imposed by a court of equity to prevent unjust enrichment arising when one party receives a benefit the retention of which would be unjust as against the other." Prince v. Bryant, 87 Wis. 2d 662, 667, 275 N.W.2d 676 (1979). When we speak of "constructive trust" and "unjust enrichment," the pattern matches what we described in Goetz, in which we said a "remedy" is "the means or method whereby the cause of action is effectuated." Goetz, 31 Wis. 2d at 273. In other words, we determine whether the defendant owes the plaintiff an enforceable duty, and then we identify a method by which to actualize it. We used that exact formulation in Schmalz v. McKenna: "'Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.'" 58 Wis. 2d 220, 228, 206 N.W.2d 141 (1973) (quoting Restatement (First) of Restitution § 160 (1937)). See also Warsco v. Oshkosh Sav. & Tr. Co., 190 Wis. 87, 90-91, 208 N.W. 886 (1926) ("'Whereever [sic] one person has wrongfully taken the property of another, and

15

converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds.'[14] It appears to us that the foregoing quotation from Pomeroy not only constitutes good logic, but sound law.") (emphasis omitted). A constructive trust is what arises when the defendant violates an antecedent duty that will leave him unjustly enriched. It is the defendant's obligation to perform the duty that is the cause of action. The constructive trust exists for the purpose of providing a remedy when he fails to do so.

¶21 As an aside, it is important to note that although proving unjust enrichment means the plaintiff is entitled to a remedy, it does not necessarily entitle him to this remedy. After establishing unjust enrichment, the plaintiff must next demonstrate that a constructive trust is warranted. "A constructive trust will be imposed only in limited circumstances." Wilharms v. Wilharms, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980). The limitation to which Wilharms refers is the "additional showing" a plaintiff must undertake before he may have this remedy:

> Despite the suggestion of this rule[15] that unjust enrichment alone will give rise to a constructive trust, however, the decisions of this court have consistently required an additional showing. A constructive trust will be imposed only where, by means of ". . . actual or constructive fraud, duress,

---

[14] Quoting 3 Pomeroy, Equity Jurisprudence (4th Ed.) pp. 2397-2401.

[15] Restatement (First) of Restitution § 160 (1937).

16

abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct," the one against whom the trust is imposed "has either obtained or holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy . . . [.]"

*Gorski v. Gorski*, 82 Wis. 2d 248, 254-55, 262 N.W.2d 120 (1978) (quoting *Baustista*, 16 Wis. 2d at 312). *See also* *Prince*, 87 Wis. 2d at 667 (explaining the factors that must be shown in addition to unjust enrichment include "actual or constructive fraud, duress, abuse of confidential relationship, mistake, commission of a wrong or any form of unconscionable conduct."); *Meyer v. Ludwig*, 65 Wis. 2d 280, 285-86, 222 N.W.2d 679 (1974) ("[B]oth cases[16] go beyond the unjust enrichment-only test, suggested by the Restatement rule, to require something additional [such as] . . . 'duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct . . . .'"); *Masino v. Sechrest*, 268 Wis. 101, 107, 66 N.W.2d 740 (1954) ("The underlying principle of a constructive trust is the equitable prevention of unjust enrichment which arises from fraud or the abuse of a confidential relationship. 'A constructive trust arises if, but only if, it is shown that the transferee was guilty of fraud or the abuse of a confidential relationship, or if the transfer was made in contemplation of death, or is in the nature of a mortgage.' Scott on Trusts, vol. 3, § 481.3, 2358."). Therefore, Steven is

---

[16] *Schmalz v. McKenna*, 58 Wis. 2d 220, 206 N.W.2d 141 (1973); *Bautista v. Schneider*, 16 Wis. 2d 304, 114 N.W.2d 449 (1962).

17

not entitled to a constructive trust as a remedy unless he can prove unjust enrichment and the "additional showing" described in Gorski.

¶22 We recognize we have not been entirely consistent in identifying a constructive trust as a remedy. Certainly, there have been times that we have explicitly recognized it as such. See, e.g., Prince, 87 Wis. 2d at 667-68 ("Since the doctrine of constructive trust is an equitable remedy . . . ."); Pluemer v. Pluemer, 2009 WI App 170, ¶9, 322 Wis. 2d 138, 776 N.W.2d 261 ("A constructive trust is an equitable remedy imposed to prevent unjust enrichment."); Conn. Gen. Life Ins. Co. v. Merkel, 90 Wis. 2d 126, 130, 279 N.W.2d 715 (Ct. App. 1979) ("A constructive trust is an equitable remedy . . . ."). But at other times, we have left the impression it is a cause of action. See, e.g., Gorski, 82 Wis. 2d at 254 ("the amended complaint does allege facts sufficient to support a cause of action on the theory of a constructive trust."); see also Demos v. Carey, 50 Wis. 2d 262, 269, 184 N.W.2d 117 (1971) ("[T]he facts alleged . . . do not state a cause of action for constructive trust."). To remove any confusion about the matter, we conclude that a constructive trust is a remedy, not a

cause of action.  In doing so, we join the overwhelming majority of our sister jurisdictions who have addressed this question.[17]

### B.  Persistency of Constructive Trusts

¶23  Conceptually, there are two potential paths by which a person may pursue a constructive trust against property in another's possession.  First, the plaintiff may directly assert a claim against the defendant (as described above) claiming she has been unjustly enriched and that the circumstances by which the unjust enrichment arose satisfy the "additional showing" described by Gorski.  Or second, the plaintiff may prove that the defendant came into possession of property that was already burdened with a constructive trust.

¶24  Once a constructive trust exists, it travels with the property to which it attaches.  So, as long as the plaintiff can trace the property from one person to the next, he may have this

---

[17] Over 30 jurisdictions recognize that a constructive trust is a remedy.  See, e.g., Freeland v. IRS, 264 B.R. 916, 924 (N.D. Ind. 2001) ("A constructive trust is not a cause of action rather it is a remedy that may be invoked when one party has been unjustly enriched at the expense of another."); Keeling v. Keeling, 145 So. 3d 763, 769 (Ala. Civ. App. 2014) (per curiam) ("'[A] constructive trust is an equitable remedy; and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing. . . .'  In other words, a request for the imposition of a constructive trust must be tethered to some viable underlying cause of action." (internal citations omitted) (bracket in original)); Sherer v. Sherer, 393 S.W.3d 480, 491 (Tex. App. 2013) ("A constructive trust is a remedy——not a cause of action. . . .  An underlying cause of action such as a breach of fiduciary duty, conversion, or unjust enrichment is required.  The constructive trust is merely the remedy used to grant relief on the underlying cause of action.").

19

remedy until the property comes into the hands of a bona fide purchaser for value and without notice of the claim:

> [E]quity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosesoever hands it may come, except into those of a bona fide purchaser for value and without notice . . . .

Warsco, 190 Wis. at 90 (quoting 3 Pomeroy, Equity Jurisprudence (4th Ed.) pp. 2397-2401) (emphasis omitted)). See also Richards, 58 Wis. 2d at 298 ("'Where a person holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee (by means of a constructive trust) unless the transferee is a bona fide purchaser.'") (quoting 5 Scott, Law of Trusts (3d ed.), p. 3444, § 470). If the property reaches the hands of a bona fide purchaser for value, the constructive trust attaches to the proceeds from the purchase. "As a necessary consequence of this doctrine, whenever property subject to a trust is wrongfully sold and transferred to a bona fide purchaser, so that it is freed from the trust, the trust immediately attaches to the price or proceeds in the hands of the vendor . . . ." Warsco, 190 Wis. at 90 (quotation omitted).

## C. Steven's Complaint

¶25 Armed with these principles, we are now ready to scrutinize Steven's Complaint for a cause of action capable of implicating the property in Terry's possession. As we discussed above, we will not be captured by labels as we do so, but neither will we rewrite Steven's Complaint. He is the master of

20

his pleadings. Nor will we countermand his strategic calculations, such as his affirmative decision to dismiss certain causes of action. It is not for us to resurrect what he has let go. We will consider the Complaint from two perspectives. First, we will determine whether it pleads a cause of action directly against Terry. Second, we will consider whether it pleads a cause of action against one of her siblings that could potentially call into question her ownership of the inheritance she received from her parents.

### 1.  Claims Against Terry

¶26 We begin by determining whether the Complaint states a cause of action against Terry. As filed, two sections of the Complaint made allegations that relate to her potential liability to Steven. In one of them, the Complaint claimed Terry had been unjustly enriched as a consequence of her siblings' representations and conduct, the result of which was that she received one-third of her parents' estates instead of one-quarter (count six——unjust enrichment). As we described above, unjust enrichment is the cause of action for which a constructive trust is a potentially available remedy. However, we are analyzing the Complaint not as it was filed, but as it was presented to the circuit court on the defendants' motion for summary judgment. In response to that motion, Steven explicitly dismissed his unjust enrichment claim against all of the

21

defendants.[18] Consequently, count six (unjust enrichment) is no longer an operable part of the Complaint and is therefore incapable of asserting a cause of action against Terry.

¶27 The other section of the Complaint containing factual allegations against Terry is count nine (constructive trust). There, the Complaint says "the defendants" converted Steven's one-quarter share of their parents' estates, such that each of them should be considered to be holding Steven's share of the inheritance as a constructive trust (count nine). Because we construe pleadings liberally in the first step of the summary judgment methodology, we will understand Steven's reference to "defendants" to assert that Terry, as well as Susan and James, converted his share of the inheritance.[19] Count nine does not itself describe the conversion; instead, Steven placed those allegations in count four (common law conversion/fraud), in

---

[18] Steven's brief in response to the defendants' motion for summary judgment said: "Plaintiff voluntarily dismisses his Sixth Claim for Relief for Unjust Enrichment." There was good reason for doing so. The first element of an unjust enrichment claim requires "a benefit conferred on the defendant by the plaintiff . . . ." Sands v. Menard, 2017 WI 110, ¶30, 379 Wis. 2d 1, 904 N.W.2d 789, reconsideration denied, 2018 WI 20, ¶1, 380 Wis. 2d 107, 909 N.W.2d 176, and cert. denied, 139 S. Ct. 101 (2018). Steven's unjust enrichment claim does not allege he conferred anything on the defendants.

[19] See Wis. Stat. § 802.02(6) ("All pleadings shall be so construed as to do substantial justice."); Springer v. Nohl Elec. Prod. Corp., 2018 WI 48, ¶10, 381 Wis. 2d 438, 912 N.W.2d 1 ("we liberally construe pleadings 'with a view toward substantial justice to the parties.'" (citations omitted)).

which he says that through "Susan and James' false and fraudulent representations and conduct described above, amongst others, Susan and James caused funds to be diverted from Steven to themselves." Even if we could consider this an inartfully drawn claim of unjust enrichment, it would suffer the same fate as the actual claim of unjust enrichment: Steven dismissed it in response to Terry's motion for summary judgment.[20] With count four voluntarily dismissed, there is nothing in the Complaint to give meaning to the allegation of "conversion" in count nine. So nothing in count nine is capable of serving as an operable cause of action against Terry.

¶28 For these reasons, the Complaint does not plead any cause of action directly against Terry. So we must next determine whether the remaining claims Steven made against Susan and James might give him a right to impress a constructive trust on the inheritance Terry received from their parents.

    2. Claims Against Others That Might Implicate Terry

¶29 The two remaining claims presented to the circuit court on summary judgment were count two (undue influence) and count three (intentional interference with expected inheritance). The circuit court dismissed count two, and Steven did not challenge that decision either in the court of appeals or here. So the only remaining cause of action for us to

---

[20] Steven's brief in response to the motion for summary judgment said: "Plaintiff voluntarily dismisses his Fourth Claim for Relief for Common Law Conversion/Fraud."

consider is for "intentional interference with expected inheritance." In this section of his Complaint, Steven alleged that:

> Susan and James intentionally interfered with Steven's expected inheritance through the exercise of undue influence on Donald and Betty Lou and other bad faith conduct, including the orchestration of the preparation and execution of the Last Will and Testament of Donald J. Tikalsky and the Amended and Restated Donald J. Tikalsky and Betty Lou Tikalsky Revocable Trust dated April 8, 2009, along with any other legal documents prepared for and executed by either Donald or Betty Lou on, about or subsequent to that date.

He also alleged that "[b]ut not [sic] for Susan and James' conduct described above, Donald and Betty Lou would have left a legacy to Steven equal to that of the legacy left to each of their other three issue."[21]

---

[21] Although this cause of action survived summary judgment, the same cannot be said with respect to all of the supporting allegations. The circuit court concluded that the defendants had nothing to do with the "orchestration and preparation" of the Tikalskys' estate planning documents. Specifically, it said that Steven presented no evidence "that the defendants were involved in any way in the preparation or arrangement of the 2007, 2008, or 2009 wills or revocable trusts." And it noted that it was undisputed that the defendants knew nothing of the Tikalskys' decision to disinherit Steven, or anything about the changes to their estate planning documents (prior to Mr. Tikalsky's death) to accomplish that objective.

(continued)

24

¶30 So Steven's challenge here is to explain how the allegations in his "intentional interference" claim can provide a vehicle by which he can reach property in Terry's possession.[22] Because these facts do not charge her with any culpable conduct, Steven turns to our "innocent beneficiary" line of cases to argue that he may have access to property in her hands notwithstanding the fact that she has engaged in no inequitable behavior. However, the circumstances he describes in his Complaint do not fit the contours of the innocent beneficiary doctrine.

¶31 Our opinion in Richards provides a good illustration of the situations that call for constructive trusts on property in the hands of innocent beneficiaries. Richards, 58 Wis. 2d at 290. There, Mr. Richards was subject to a divorce decree that

---

Chief Justice Roggensack's dissent claims the circuit court's conclusions were erroneous, but she offers no support for that assertion other than a vague observation that "[a]ll one has to do is review the record to learn that Steven had a story to tell that is the opposite of what his sisters and brother told." Chief Justice Roggensack's dissent, ¶80. That may be true in gross, but it is incorrect in fine. The parts of the record cited by the dissent have nothing at all to do with what the circuit court said about the lack of evidence proffered by Steven. If the record contains evidence that contradicts the circuit court, neither the dissent nor Steven has found it.

[22] Although "intentional interference with expected inheritance" is a tort, we examine the claim without reference to how Steven labeled it. The purpose of our review is to determine whether the alleged facts could be understood as making a claim of unjust enrichment that could potentially support imposition of a constructive trust on property in Terry's possession.

required him to name his minor children as beneficiaries of certain life insurance policies. Id. at 292. After he remarried, he designated his new wife as the beneficiary. Id. We recognized that he who pays the premium of a life insurance policy gets to name the beneficiary. Id. at 293. But we also said that the divorce decree created in the children an equitable right to the insurance proceeds: "[A]lthough a divorce judgment does not expressly prohibit the owner of an insurance policy from changing the beneficiary, the decree of the court is to be given the effect of a continuing obligation to carry out the provisions set forth therein." Id. at 296. Therefore, when Mr. Richards changed the life insurance beneficiary, he was conveying a property interest to his wife that was already freighted with a constructive trust. We said "the mere ignorance of the recipient of the original impropriety did not make the recipient an innocent purchaser or, as contemplated in the rules stated by Scott on Trusts, a bona fide purchaser." Id. at 298.

¶32 The general rule we gleaned from this was that "'[w]here a person holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee (by means of a constructive trust) unless the transferee is a bona fide purchaser.'" Id. at 298 (citation omitted). This rule does not dispense with the need to prove unjust enrichment or establish Gorski's "additional showing." When this pattern occurs, it is clear that the innocent beneficiary "was, in fact, enriched,

26

although not because of any unconscionable conduct on her part." Prince, 87 Wis. 2d at 668. The "additional showing" required by Gorski, in these situations, is resident in the violation of the transferor's obligation to a third person: "[A] change of beneficiary in violation of an express provision of a divorce judgment is a sufficient additional factor," as is "a change of beneficiary in violation of an express promise supported by consideration . . . ." Id. at 670. The constructive trust attaches to the property in the transferor's hands, following which our normal rules about the persistency of trusts (see supra III.B) come into play, which allow the third party to reach the property in the hands of all transferees until it comes into the possession of a bona fide purchaser for value.

¶33 Steven's Complaint does not fit this pattern. The Richards rule contemplates the owners of the property conveying it to an innocent beneficiary in violation of a duty to transfer it to the plaintiff. Steven imagines himself to be in the place of the person to whom the duty is owed, while Terry stands in for the innocent beneficiary. Steven's Complaint does not describe a Richards scenario because it was the Tikalskys, not Susan and James, who transferred the property in question to Terry. And the Tikalskys owed Steven no duty to make him a beneficiary of their estates. See Bautista, 58 Wis. 2d at 229; see also Olszewski v. Borek, 254 Wis. 153, 157, 35 N.W.2d 209 (1948), on reh'g, 254 Wis. 153, 35 N.W.2d 911 (1949) ("It has often been held by this court that one of the most important rights that a normal adult person has is his power to dispose of

27

his property by will as he chooses. In fact, it has been referred to by this court as a 'sacred right' and one that is guaranteed by the constitution."); Schaefer v. Ziebell, 207 Wis. 404, 410, 241 N.W. 382 (1932) ("One of the most important rights that a person of full age, mature mind, and disposing memory enjoys is the absolute right to dispose of his property by will as he may choose."). So the Tikalskys violated no duty to Steven when they caused their estate planning documents to transfer part of their estates to Terry. And in the context of innocent beneficiaries, where there is no violated duty, there can be neither unjust enrichment nor an "additional showing," and so there can be no constructive trust. Therefore, the sole remaining set of factual allegations in Steven's Complaint does not state a cause of action capable of implicating Terry or the property in her possession.

### 3. The Dissents

#### a. Chief Justice Roggensack

¶34 Chief Justice Roggensack, however, believes there is a path we can follow from the Complaint's allegations all the way to a constructive trust over property in Terry's hands. She says "a constructive trust is an appropriate remedy if Susan, James and Terry have converted property from their parents' estate that would have been devised to Steven but for wrongful influence over Donald and Betty Lou." Chief Justice Roggensack's dissent, ¶68. According to the Chief's formulation, the Complaint would need to allege facts sufficient

28

to support two torts, to wit, conversion and undue influence. On the state of the record before us, it does not.

¶35 With respect to the tort of conversion, the Chief's dissent says "Steven claims Terry converted property to her own use that should have been devised to him." Id., ¶77. And it faults Terry for not having rebutted that allegation in the summary judgment proceedings:

> Although Terry's answer denies the factual allegations and legal claims made in Steven's complaint, she makes no evidentiary offer of proof by affidavit or otherwise sufficient to show a prima facie case for summary judgment dismissing Steven's claim against her for possession and subsequent conversion of property that should have belonged to him.

Id., ¶78. Steven, of course, dismissed his conversion claim. The dissent, surprisingly, believes this was a non-event. It says the "majority opinion mistakenly concludes that 'Steven voluntarily dismissed' his allegations of wrongful possession that led to conversion of the property." Id., ¶78 n.13. "That," it says, "never happened." Id. The record begs to differ. Steven's response to the defendants' motion for summary judgment said: "Plaintiff voluntarily dismisses his Fourth Claim for Relief for Common Law Conversion/Fraud." That seems pretty definitive. But perhaps the dissent means to say that the voluntary dismissal was merely a representation that Steven would no longer assert that the alleged facts add up to a conversion. If that is what the dissent meant, it did not follow through with its own understanding of what Steven said. At every step of the analysis, the dissent relied on the

29

viability of a conversion claim.[23] That is to say, the dissent's analysis depends entirely on an inscrutable insistence that Steven might be able to prove a claim he voluntarily dismissed. Because the dissent's path to the imposition of a constructive trust depends on a nonexistent conversion claim, it must necessarily fail. It must fail for the additional reason that the other claim upon which its rationale is founded does not exist either.

¶36 The second tort necessary to the dissent's analysis is "undue influence." But the circuit court granted Terry summary

---

[23] See, e.g., Chief Justice Roggensack's dissent, ¶73 ("The complaint alleges that '[t]he funds that constituted a one-quarter share in Donald and Betty Lou's joint estate plan and were converted from Steven to the defendants were at all times after the conversion held by the defendants in constructive trust for Steven.'" (emphasis added)); id. ("'[A] complaint states a claim in conversion when it alleges that the plaintiff is "entitled to immediate possession" of a "chattel" over which the defendant had wrongfully retained dominion or control.'" (emphasis added) (citation omitted)); id. ("'An action for conversion is bottomed upon a tortious interference with possessory rights.'" (emphasis added) (citation omitted)); id., ¶76 ("In the matter before us, the allegations in the complaint state a claim for wrongful possession and conversion of property by Terry on which relief can be granted, and the answers join issues of fact and of law.") (emphasis added); id., ¶77 ("Steven claims Terry converted property to her own use that should have been devised to him.") (emphasis added); id. ("Therefore, if one is in possession of property which in equity should belong to another and the possessor puts that property to his or her own use, the possessor has converted property of another.") (emphasis added); id., ¶78 ("[S]he [Terry] makes no evidentiary offer of proof by affidavit or otherwise sufficient to show a prima facie case for summary judgment dismissing Steven's claim against her for possession and subsequent conversion of property that should have belonged to him.") (emphasis added).

30

judgment with respect to this claim, and entered a final order dismissing all claims against her with prejudice. Steven has not appealed the circuit court's ruling on this claim. The dissent, however, says we may ignore the circuit court's decision, as well as Steven's failure to appeal it:

> The dismissal was not a final judgment with regard to Susan and James or Steven; therefore, Steven had no right to appeal its dismissal, and he could not bring it to us. Wis. Stat. § 808.03. The majority opinion errs when it relies on Steven's not appealing the dismissal of his claim for undue influence and states that the "only remaining cause of action" is the claim of intentional interference with expected inheritance.

Chief Justice Roggensack's dissent, ¶67 n.10.

¶37 The dissent is correct that the dismissal was not final "with regard to Susan and James," but we are not interested in the status of the claim as against them. We are interested in its status with respect to Terry. The circuit court thought the claim lacked merit, and the judgment dismissing Terry from the case made that conclusion final as between her and Steven. Specifically, if proven, this the circuit court said "[t]he defendants' motion for summary judgment as to the Second Claim for Relief asserted in the plaintiffs' complaint, for undue influence is hereby GRANTED, and that cause of action is hereby dismissed, with prejudice." The subsequent judgment made it clear the disposition was final as between Terry and Steven: "All claims asserted by the plaintiff, J. Steven Tikalsky, against the defendant, Terry Stevens, are hereby dismissed, with prejudice." It concluded

31

with the admonition that "[t]his Judgment is final for purposes of appeal."

¶38 It is an unremarkable precept in our rules of procedure that a party who does not raise an appealable issue before the appropriate appellate tribunal forfeits it. See, e.g., Yakus v. United States, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar . . . than that a constitutional right may be forfeited in . . . civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); Freytag v. C.I.R., 501 U.S. 868, 894-95 (1991) (Scalia, J., concurring) ("Forfeiture is 'not a mere technicality and is essential to the orderly administration of justice.'") (citation omitted); State v. Huebner, 2000 WI 59, ¶11, 235 Wis. 2d 486, 611 N.W.2d 727 (stating "issues that are not preserved are deemed waived" and explaining that it would be more precise to use "forfeited" rather than "waived"); United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc., 2013 WI 72, ¶16, 349 Wis. 2d 587, 836 N.W.2d 807 ("[b]y supreme court rule, '[i]f a petition [for review] is granted, the parties cannot raise or argue issues not set forth in the petition unless ordered by the' court.") (brackets in original) (citation omitted); Preisler, 360 Wis. 2d 129, ¶59 ("[w]e decline to consider issues not raised in petitions for review."); Attorney's Title Guarantee Fund, Inc. v. Town Bank, 2014 WI 63, ¶61, 355 Wis. 2d 229, 850 N.W.2d 28 (Bradley, Ann Walsh, J., dissenting) ("where a party has not raised an issue before the circuit court or the court of

32

appeals, we deem that issue forfeited."). The circuit court's adjudication of the undue influence claim, so far as it relates to Terry,[24] became final and appealable upon entry of judgment disposing of all claims against her. Steven appealed, but did not raise this issue before the court of appeals. Nor does he address it here. Therefore, one of two conclusions must obtain. Either Steven does not disagree with the circuit court's ruling, or he forfeited his opportunity to challenge it by failing to include the issue in his appeal. Whichever it is, we cannot simply pretend this is a live claim when Steven has abandoned it.[25] And the dissent does not explain why we should. So the dissent's entire analytical framework is faulty because it presumes the existence of two well-pled torts, both of which have been irrevocably dismissed.

b. Justice Ann Walsh Bradley

¶39 Justice Ann Walsh Bradley also believes there is a path from the Complaint's allegations to a constructive trust over property in Terry's possession, although it is different from the one chosen by Chief Justice Roggensack. Justice Bradley settled on count 3——intentional interference with

---

[24] Resolution of the undue influence claim is not final with respect to Susan and James, of course, because there are still matters pending in the circuit court between them and Steven.

[25] "[T]he issues before the court are the issues presented in the petition for review and not discrete arguments that may be made, pro or con, in the disposition of an issue either by counsel or by the court." State v. Weber, 164 Wis. 2d 788, 789, 476 N.W.2d 867 (1991) (footnote omitted).

33

expected inheritance. Unlike count 2 (undue influence) and count 4 (conversion), this is at least a live claim inasmuch as neither Steven nor the circuit court dismissed it. It is not, however, capable of supporting imposition of a constructive trust.

¶40 The dissent largely adopts the court of appeals' understanding that successfully proving count 3 would satisfy the requirements for imposing a constructive trust. "With respect to the first element of a constructive trust," the court of appeals said, "Steven's allegations and supporting evidence raise material facts tending to show that his siblings hold title to property that equity dictates should go to him." Tikalsky, 2017AP170, unpublished slip op., ¶14. Therefore, "'[i]f proven, this claim would establish that all three siblings (including Terry) were unjustly enriched by an inheritance that would have gone——at least in part——to Steven.'" Justice Ann Walsh Bradley dissent, ¶86 (emphasis in original).

¶41 But that does not follow at all. Proof of count 3 means that Susan and James, not Terry, are liable to Steven. No principle of equity so much as even hints that proving such a claim would make anyone other than the tortfeasor responsible to the victim. Tortfeasors are liable for their own torts, not their non-tortfeasor siblings. "It is a basic principle of law, as well as common sense, that one is typically liable only for his or her own acts, not the acts of others." Lewis v. Physicians Ins. Co. of Wisconsin, 2001 WI 60, ¶11, 243 Wis. 2d 648, 627 N.W.2d 484; see also Oxmans' Erwin Meat Co. v.

34

Blacketer, 86 Wis. 2d 683, 692, 273 N.W.2d 285 (1979) ("An individual is personally responsible for his own tortious conduct."); CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp., 174 Wis. 2d 604, 610, 497 N.W.2d 115 (1993) ("[A]s a matter of justice, tort law shifts the losses caused by a personal injury to the one at fault . . . ."); Oliver Wendell Holmes, Jr., Agency, 5 Harv. L. Rev. 1, 14 (1891) ("I assume that common-sense is opposed to making one man pay for another man's wrong, unless he actually has brought the wrong to pass according to the ordinary canons of legal responsibility . . . .").[26]

¶42 The dissent and court of appeals disagree. They would make Terry——a non-tortfeasor——liable to Steven for the torts of Susan and James through the expedient of imposing a constructive trust on property in Terry's possession. But they do not describe the mechanism by which Terry could be held liable for James and Susan's torts. Nor could they. In the absence of a claim of unjust enrichment, the only other basis for a constructive trust is the transfer of property to an innocent

---

[26] This is consistent with how the tort of intentional interference with expected inheritance was formulated in Harris v. Kritzik, 166 Wis. 2d 689, 480 N.W.2d 514 (Ct. App. 1992). There, the court of appeals said: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." Id. at 695 (adopting Restatement (Second) of Torts, § 774B (1977)). The liability link between tortfeasor and victim is explicit. It is the one engaging in the tortious conduct who "is subject to liability to the other for loss of the inheritance or gift." Id.

35

beneficiary in violation of a duty to transfer it to the plaintiff, as described in Richards. Even Wilharms, upon which both the dissent and the court of appeals relied, recognized this. In Wilharms, a husband changed the beneficiary of a life insurance policy contrary to a court order. The Wilharms court quoted Richards for the controlling principle: "'Where a person holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee (by means of a constructive trust) unless the transferee is a bona fide purchaser.'" Wilharms, 93 Wis. 2d at 679. As discussed above, count 3 cannot possibly describe such a situation because the transferors——the Tikalskys——were under no obligation to transfer anything at all to Steven. So the claim that Susan and James intentionally interfered with Steven's expected inheritance cannot support imposition of a constructive trust over property in Terry's possession.[27]

---

[27] The dissent says Wilharms v. Wilharms, 93 Wis. 2d 671, 287 N.W.2d 779 (1980), recognized the existence of a free-floating constructive trust that can attach to property without reference to a supporting cause of action. Justice Ann Walsh Bradley dissent, ¶83 n.2. Wilharms did no such thing. To the contrary, it tightly tied the availability of a constructive trust to the potential unjust enrichment consequent upon Dennis Wilharms having named a new insurance beneficiary in violation of a court order. We remanded the Wilharms case, and in doing so we directed that future proceedings concentrate on whether there had been unjust enrichment: "The question on remand therefore is whether the parents of Dennis Wilharms were unjustly enriched by their own or their son's wrongful conduct." Wilharms, 93 Wis. 2d at 679. In other words, a constructive trust would not attach in the absence of unjust enrichment.

(continued)

36

\*

¶43 Steven's Complaint cannot survive summary judgment if it does not state a claim on which relief may be granted. Before we assayed the Complaint for the existence of such claims, we first had to clarify what qualifies as a cause of action. After concluding that a constructive trust does not fall into that category, we nonetheless scoured the alleged facts——without regard for how they were grouped or labeled——to determine whether they comprised one or more causes of action against Terry or were otherwise capable of calling into question her ownership of the inheritance she received from her parents. They did not.

## IV. CONCLUSION

¶44 We hold that a constructive trust is not a cause of action and that Steven's Complaint does not state a claim for relief against Terry. Therefore, the circuit court did not err when it dismissed her from the case with prejudice.

---

Because there can be no constructive trust in the absence of a good cause of action, the dissent's analysis is flawed. The dissent acknowledges there are no remaining claims against Terry. Justice Ann Walsh Bradley dissent, ¶83 n.2. And it does not address how the Tikalskys' decision to disinherit Steven is comparable to Dennis Wilharms' decision to name a new life insurance beneficiary. Because it was Mr. Wilharms' violation of a duty that potentially gave rise to a claim of unjust enrichment, the dissent must identify a correlative duty here. But the Tikalskys were under no obligation to make Steven an heir, so disinheriting him violated no duty. Contrary to the dissent's argument, therefore, Wilharms does not say a constructive trust can be imposed in this case because there has been no violated duty. So Wilharms can provide no succor for the dissent's belief in a self-animating constructive trust.

*By the Court.*—The decision of the court of appeals is reversed.

¶45 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join the majority but concur and write separately to further clarify the issue we were called upon to decide, which is, whether a constructive trust is an independent cause of action. Because it is not and instead is a remedy, Terry Stevens ("Stevens") must be dismissed from this action. Stated differently, it is undisputed that Steven Tikalsky ("Tikalsky") alleged only two causes of action against Stevens: (1) unjust enrichment and (2) constructive trust. As the unjust enrichment claim was dismissed, we are left to decide whether a constructive trust is a stand-alone cause of action or instead, a remedy. Because it is a remedy, Stevens was properly dismissed. If this case were not now dismissed as to Stevens, she would remain solely to satisfy a remedy awarded if alleged wrongdoing of others is proven. To the extent constructive trusts have been imposed, they are a potential remedy once a viable cause of action has been proven against that defendant. Here, no viable cause of action remains against Stevens. Constructive trust is not a stand-alone cause of action. As a result, Stevens was properly dismissed from the action. See, e.g., Sulzer v. Diedrich, 2003 WI 90, ¶¶26-30, 263 Wis. 2d 496, 664 N.W.2d 641; Wilharms v. Wilharms, 93 Wis. 2d 671, 679-81, 287 N.W.2d 779 (1980); Richards v. Richards, 58 Wis. 2d 290, 296-99, 206 N.W.2d 134 (1973); Schmalz v. McKenna, 58 Wis. 2d 220, 231, 206 N.W.2d 141 (1973); Connecticut General Life Ins. Co. v. Merkel, 90 Wis. 2d 126, 132-34, 279 N.W.2d 715 (Ct. App. 1979) (all cases

1

of constructive trust with underlying causes of action being unjust enrichment).

¶46 I write to further explain why here, Stevens does not properly remain in this case because no viable legal theory of liability has been alleged against her. Although Tikalsky's arguments have morphed somewhat, Tikalsky makes no argument that any otherwise unstated cause of action, such as conversion, has been alleged against Stevens.[1] Instead, he urges that the complaint be viewed to support "an equitable claim for imposition of a constructive trust" despite no allegation made against the innocent property holder. Tikalsky argues, "once the elements of a constructive trust are established, the equitable claim can proceed." I would clarify that absent a viable cause of action——which could be the violation of a court order or contract which resulted in wrongful distribution to an innocent beneficiary——there can be no consequent remedy of constructive trust against Stevens. Here, no such violation of court order or contract has been alleged. Tikalsky's argument instead rises and falls with variations of the same theme: whether a constructive trust is a viable, stand-alone cause of action. Specifically, he argues that he has stated a viable cause of action by pleading the elements of constructive trust,

---

[1] Under Wisconsin law, a plaintiff claiming conversion must show that (1) the defendant intentionally controlled or took property belonging to the owner; (2) the defendant controlled or took the property without the owner's consent or without lawful authority; and (3) the defendant controlling or taking the property seriously interfered with the owner's right to possess the property. Wis. JI-Civil 2200 (2014).

2

that a claim for "restitution" alone is viable, and because "the equitable claim or cause of action might be labeled 'unjust enrichment' based upon third party wrongdoing." Here, seeking this constructive trust remedy, absent an underlying cause of action, is legally insufficient.[2]

¶47 The majority correctly concludes that a constructive trust is a remedy, not a cause of action. Additionally, the majority correctly concludes that Tikalsky could not seek a constructive trust without a viable underlying cause of action against Stevens. Because no viable cause of action remains against her, the remedy of a constructive trust cannot independently exist as a stand-alone claim. In other words, Tikalsky is precluded from asserting the right to this remedy absent an underlying cause of action that would give rise to a constructive trust. While the majority is correct in its conclusions, I write to further emphasize the majority's conclusions. There is a fundamental difference between an underlying cause of action——here, unjust enrichment——and the potential remedy of a constructive trust.

¶48 I begin with the general distinction between a cause of action and a remedy. The majority correctly states that causes of action and remedies are distinct legal concepts, and must be understood and applied as such. "[A] cause of action

---

[2] The remaining claims against the other siblings, however, are not affected by this determination. Those other siblings have not made any allegations against Stevens so to otherwise make her a proper party to this litigation.

3

owes its existence to a set of operative facts." Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 145, 293 N.W.2d 897 (1980); see also Caygill v. Ipsen, 27 Wis. 2d 578, 582, 135 N.W.2d 284 (1965) ("The operative facts, not the consequences, are determinative of a cause of action."). A remedy is a consequence that flows from a successful cause of action. Goetz v. State Farm Mut. Auto Ins. Co., 31 Wis. 2d 267, 273-74, 142 N.W.2d 804 (1966); see also Franklin v. Gwinnett Cty. Pub. Schs., 503 U.S. 60, 73-74 (1992) (discussing the difference between a cause of action and a remedy, and stating that "[f]ederal courts cannot reach out to award remedies when the Constitution or laws of the United States do not support a cause of action"). A viable cause of action is thus a necessary precedent, separate and distinct from a potential remedy, but required in order to give rise to the potential relief prayed for in the complaint. A cause of action owes its existence to a set of operative facts and legal conclusions that if proven require consideration of whether a remedy should be awarded. Contrary to the court of appeals' conclusion, such a distinction is not "largely immaterial." Rather, the distinction between a cause of action and a remedy is essential.

¶49 Since a constructive trust is a remedy and not a stand-alone cause of action, I will briefly discuss unjust enrichment as a cause of action. Unjust enrichment is a stand-alone cause of action. See, e.g., Sands v. Menard, 2017 WI 110, ¶¶29-30, 379 Wis. 2d 1, 904 N.W.2d 789 (referring to "claims based upon unjust enrichment" and referring to "action[s] for

4

recovery based upon unjust enrichment"); Admiral Ins. Co. v. Paper Converting Machine Co., 2012 WI 30, ¶¶49-50, 339 Wis. 2d 291, 811 N.W.2d 351 (describing unjust enrichment as a theory of recovery and as a claim); Watts v. Watts, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987) (stating that unjust enrichment is a "theory of recovery" and describing it as a stand-alone cause of action); Lawlis v. Thompson, 137 Wis. 2d 490, 496, 405 N.W.2d 317 (1987) (describing unjust enrichment as "a well-recognized and long-accepted theory in Wisconsin jurisprudence," and referring to it as "a cause of action"); Puttkammer v. Minth, 83 Wis. 2d 686, 688-89, 266 N.W.2d 361 (1978) (referring to unjust enrichment as a "cause of action" and considering whether the plaintiff stated a claim for relief for unjust enrichment).

¶50 "[A]n action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." Watts, 137 Wis. 2d at 530 (citing Puttkammer, 83 Wis. 2d at 689). In a cause of action for unjust enrichment, "the focus is on the benefit received by one party from the other party which would be inequitable to retain." Sands, 379 Wis. 2d 1, ¶41 (citing Boldt v. State, 101 Wis. 2d 566, 573, 305 N.W.2d 133 (1981)). To succeed on an unjust enrichment claim and thus be entitled to restitution, a plaintiff must show "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by

5

the defendant under circumstances making it inequitable to do so." See Sands, 379 Wis. 2d 1, ¶30 (citing Watts, 137 Wis. 2d at 531); see also Wis. JI-Civil 3028 (2016).

¶51 While unjust enrichment is undoubtedly a cause of action, a constructive trust is but one method of providing restitution to a party who succeeds on an unjust enrichment claim and it has its own elements. Although Wisconsin courts have not always been precise and uniform when describing a constructive trust, today we clarify that that a constructive trust is a remedy and not an independent cause of action. We decline to extend here the doctrine of unjust enrichment under a third-party beneficiary theory so to create a constructive trust as a remedy for Tikalsky when no viable cause of action has been pled.

¶52 "A constructive trust is an equitable device used to prevent unjust enrichment which arises when a party receives a benefit the retention of which is unjust to another party." Sulzer, 263 Wis. 2d 496, ¶20 (citing Wilharms, 93 Wis. 2d at 678-79). Put differently, where unjust enrichment occurs, a constructive trust may be imposed as a remedy to ensure that an unjustly received benefit goes to the proper party. However, a constructive trust is not always the automatic remedy when unjust enrichment has been proven. This court has stated that the conditions precedent for such a constructive trust to be imposed are "(1) unjust enrichment and (2) abuse of a confidential relationship or some other form of unconscionable conduct." Watts, 137 Wis. 2d at 533-34. Thus, a constructive

6

trust might or might not be the proper remedy even when unjust enrichment is proven.

¶53 This court has stated that circuit courts may impose a constructive trust in cases of "'actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct,'" and only where "the one against whom the trust is imposed 'has either obtained or holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy.'" Gorski v. Gorski, 82 Wis. 2d 248, 254-55, 262 N.W.2d 120 (1978) (quoting Bautista v. Schneider, 16 Wis. 2d 304, 312, 114 N.W.2d 449 (1962)). Thus, as our jurisprudence reflects, no stand-alone cause of action exists for a constructive trust, and a constructive trust remedy will not be imposed absent successful prosecution of a viable cause of action and then the elements of constructive trust must be proven. In this case, the relationship between unjust enrichment and a constructive trust is that of a cause of action and a remedy, not that of two independent causes of action.

¶54 As a practical matter, consider for example, how a defense might ever be mounted to a request for a constructive trust if no cause of action exists to defend against. If a constructive trust were to be considered a stand-alone cause of action, an asset-holder would be left with no defense or role other than to possibly assist in the defense of those against whom a claim has been made. The asset-holder's property would be held hostage, subject to the will and decisions of those who are able to mount a defense, despite the fact that plaintiff

7

asserts no claim or wrongdoing against the asset-holder. It is most incongruous that one be a party to litigation simply because a plaintiff would prefer to, if successful, collect one person's property by a constructive trust rather than that of the parties for which liability is alleged.[3] As highlighted by

[3] I recognize that this court has imposed a constructive trust on innocent beneficiaries who engaged in no wrongdoing, but those cases have been limited to situations where a plaintiff has established a right to the innocent party's property due to an existing court order, contract, or a confidential relationship. See Sulzer v. Diedrich, 2003 WI 90, ¶¶26-30, 263 Wis. 2d 496, 664 N.W.2d 641 (imposing constructive trust where retirement benefits were not properly divided pursuant to divorce judgment due to mutual mistake); Wilharms v. Wilharms, 93 Wis. 2d 671, 679-81, 287 N.W.2d 779 (1980) (holding that constructive trust may be imposed where divorced husband changed life insurance beneficiary designation to dispose of his ex-wife's interest in violation of a temporary court order, but remanding for further factual determination); Prince v. Bryant, 87 Wis. 2d 662, 672-75, 275 N.W.2d 676 (1979) (stating that a constructive trust may be imposed where a divorced husband removed his ex-wife as a named beneficiary of his life insurance policies in violation of temporary court order, but remanding for further findings of fact on the issue); Richards v. Richards, 58 Wis. 2d 290, 296-99, 206 N.W.2d 134 (1973) (imposing constructive trust where divorced husband changed beneficiary of life insurance policy to the defendant in violation of divorce judgment); Bautista v. Schneider, 16 Wis. 2d 304, 312-14, 114 N.W.2d 449 (1962) (imposing constructive trust to require divorced wife to return proceeds from bonds to her ex-husband's estate in conformity with their divorce judgment). However, where no judgment, contract, or confidential relationship has been violated, this court has also declined to impose a constructive trust where the defendant engaged in no "fraud, duress, abuse of confidence, mistake, commission of a wrong or 'any form of unconscionable conduct[,]'" and where the plaintiff established no right to the defendant's property. Schmalz v. McKenna, 58 Wis. 2d 220, 231, 206 N.W.2d 141 (1973) (declining to impose constructive trust where decedent added $10,000 bequest to defendant pursuant to a contract but defendant breached contract prior to decedent's death, because the will did not reference or depend on the contract and defendant engaged in no wrongdoing); see also

(continued)

8

the majority, nearly 40 jurisdictions have rejected such a proposition, holding that a constructive trust is a remedy and not a cause of action. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci, 34 N.E.3d 1023, 1045 (Ill. App. Ct. 2015) ("We first note that a constructive trust is a remedy, not a cause of action."); Keeling v. Keeling, 145 So. 3d 763, 769 (Ala. Civ. App. 2014) ("[A] constructive trust is an equitable remedy; and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing."); Sterenbuch v. Goss, 266 P.3d 428, 437 (Colo. App. 2011) (citation omitted) ("[A] constructive trust, being a remedy to prevent unjust enrichment, is not to be pled as a separate cause of action . . . .").

---

Connecticut General Life Ins. Co. v. Merkel, 90 Wis. 2d 126, 132-34, 279 N.W.2d 715 (Ct. App. 1979) (declining to impose constructive trust where divorced husband removed his ex-wife as a named beneficiary of his life insurance policy because no judgment or contract was violated). A "confidential relationship" in the context of constructive trust cases involves more than the presence of a familial relationship alone, as there must be "other facts indicating a relation of confidence" for a constructive trust to be imposed. Gorski v. Gorski, 82 Wis. 2d 248, 256-58, 262 N.W.2d 120 (1978) (denying defendant's motion to dismiss and stating that a constructive trust may be imposed where the defendant retained funds his brother-roommate gave him over a period of 12 years in violation of an oral agreement, as the facts alleged indicated a close and "confidential relationship" between the parties); see also Meyer v. Ludwig, 65 Wis. 2d 280, 285-88, 222 N.W.2d 679 (1974) (imposing constructive trust to convey title to a house to defendant, where defendant made substantial improvements over a period of years on the house her parents promised to give her, and where the facts established a confidential relationship between the plaintiff and defendant, who were father and daughter and who lived on the same property for years and provided each other mutual support and assistance).

¶55 By way of analogy, the remedy of a constructive trust operates similar to the remedy of punitive damages. The remedy of punitive damages does not independently exist as a claim and in fact, is not provided for unless compensatory damages are first awarded. Wisconsin law is clear that a party may not be awarded punitive damages without a viable underlying cause of action and a compensatory award. See Groshek v. Trewin, 2010 WI 51, ¶30, 325 Wis. 2d 250, 784 N.W.2d 163; Tucker v. Marcus, 142 Wis. 2d 425, 440-41, 418 N.W.2d 818 (1988); Hanson v. Valdivia, 51 Wis. 2d 466, 474, 187 N.W.2d 151 (1971). Wisconsin Stat. § 895.043 allows punitive damages only where "evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." § 895.043(3).

¶56 To seek either a constructive trust or punitive damages, a party must first succeed on an underlying cause of action. If the party does not succeed on an underlying cause of action, then it is not entitled to any relief, and neither punitive damages nor a constructive trust may be sought. Simply stated, neither are stand-alone causes of action.[4]

---

[4] Punitive damages were available as a common law remedy. Since Wis. Stat. § 895.043(3) was created in 1995, Wisconsin courts have explained that punitive damages are a remedy, not a cause of action. See Fouts v. Breezy Point Condo. Ass'n, 2014 WI App 77, ¶23 n.2, 355 Wis. 2d 487, 851 N.W.2d 845 ("We observe that Fouts' complaint incorrectly frames his request for punitive damages as a separate cause of action."); Hansen v. Texas Roadhouse, Inc., 2013 WI App 2, ¶21, 345 Wis. 2d 669, 827 N.W.2d 99 ("Punitive damages are a remedy, not a cause of action."). Even prior to the creation of § 895.043, this court emphasized that punitive damages were a remedy and not a cause

(continued)

¶57 Turning to the case at hand, the majority correctly concludes that the complaint fails to state a claim against Stevens because the only remaining claim against her——here, unjust enrichment——was dismissed. Since no claim exists against Stevens, the imposition of a remedy, a constructive trust, is not allowable under the law. Tikalsky does not argue that the complaint otherwise states an alternative cause of action not specifically pled. As a result, a constructive trust cannot be imposed with respect to Stevens. Therefore, the court of appeals was incorrect to conclude that a constructive trust could be sought against Stevens without the existence of a viable cause of action against her.

¶58 While I join the majority, I write separately to highlight the distinction between a cause of action——here, unjust enrichment——and the remedy sought——here, a constructive trust.

¶59 For the foregoing reasons, I respectfully concur.

---

of action. In <u>Brown v. Maxey</u>, 124 Wis. 2d 426, 431, 369 N.W.2d 677 (1985), this court stated "that the availability of a punitive damage award is not dependent upon the classification of the underlying cause of action, but, rather, upon proof of the requisite 'outrageous' conduct" (footnote omitted). This court further "stress[ed] that punitive damages are in the nature of a remedy and should not be confused with the concept of a cause of action." <u>Id.</u>

11

¶60 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* The question presented is whether Terry Stevens (Terry), one of four children of Donald and Betty Lou Tikalsky, is properly joined in this action to recover property from her that she received from her parents through what is alleged to be tortious conduct by Susan Friedman (Susan) and James Tikalsky (James), two other children of Donald and Betty Lou. Because I conclude that J. Steven Tikalsky (Steven) has made a sufficient claim against Terry, which if proved would warrant the imposition of a constructive trust on some of the property she received from the estate of Donald and Betty Lou, for which claim Terry did not make an evidentiary, prima facie case for dismissal, and for which Steven provided sufficient evidentiary support to create material issues of fact, I would affirm the court of appeals' reversal of the circuit court's summary judgment, and I respectfully dissent from the majority opinion.

## I. BACKGROUND[1]

¶61 The majority opinion ably sets forth the circumstances from which Steven's claims arise; therefore, I will relate here only what is necessary for the reader to understand the following discussion. In 1999, Donald and Betty Lou's estate planning documents divided their property equally among their four children. In 2007, Donald and Betty Lou revised those documents specifically to exclude Steven and Steven's children from any inheritance. Although some of the estate planning

---

[1] The factual assertions that follow are either uncontested facts or shown as allegations from Steven's complaint.

documents were revised in 2008 and 2009, they continued to exclude Steven and his children from any inheritance from Donald and Betty Lou.

¶62 Donald died in 2009, five months after he and Betty Lou made the final revision to their estate plan. It is the difference in Steven's inheritance in Donald and Betty Lou's 1999 estate plan and the estate plan finalized in 2009 that Steven alleges was caused by Susan's and James' tortious influence of his parents' decision making.

¶63 Betty Lou died in 2014, and in 2015, Steven filed the action now before us. Steven alleged, among other claims, that Susan and James intentionally exerted undue influence over Donald and Betty Lou and interfered with his expected inheritance by arranging the preparation and execution of his parents' wills and the changes to their trust documents that excluded Steven and his children. The complaint also alleged a claim for unjust enrichment against Terry.[2] Steven voluntarily dismissed that claim, so it is not before us. However, dismissal of the unjust enrichment claim did not dismiss the factual allegations that preceded or followed that label as they

_____

[2] The elements of unjust enrichment are: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) acceptance and retention of the benefits by the defendant under circumstances making it inequitable to do so. Puttkammer v. Minth, 83 Wis. 2d 686, 688-89, 266 N.W.2d 361 (1978). The benefit that Terry retains was not conferred by Steven, but by her parents; therefore, dismissal of the claim for unjust enrichment was reasonable. See also Estate of Lade v. Ketter, 82 Wis. 2d 80, 85, 260 N.W.2d 665 (1978).

were incorporated by reference into subsequent portions of the complaint.

¶64 Furthermore, the allegations in the complaint incorporate Terry as participating in rewards from Susan's and James' allegedly tortious conduct. For example, the complaint alleges that "[b]ut not for Susan and James' conduct described above, Donald and Betty Lou would have left a legacy to Steven equal to that of the legacy left to each of their other three issue."[3] The complaint goes on to state that "Susan and James' false and fraudulent representations and conduct described above resulted in a benefit being conferred upon Susan, James and Terry by making them each one-third beneficiaries of Donald and Betty Lou's joint estate plan rather than one-fourth beneficiaries along with Steven."[4] The complaint alleges that Terry was aware of Susan's and James' conduct and that she benefitted from it. For example, the complaint states, "Susan, James and Terry had knowledge of and appreciation of the benefit;"[5] and "Susan, James and Terry accepted and retained the benefit under circumstances that make it inequitable for them to retain the benefit."[6]

¶65 The complaint also alleges that by retaining a one-third interest in her parents' estate, Terry was a participant

---

[3] Complaint, ¶123.

[4] Complaint, ¶133.

[5] Complaint, ¶134.

[6] Complaint, ¶135.

3

along with Susan and James in converting property to their own use that Steven claims should have been his. The complaint alleges that "[t]he funds that constituted a one-quarter share in Donald and Betty Lou's joint estate plan and were converted[7] from Steven to the defendants were at all times after the conversion held by the defendants in constructive trust for Steven."[8]

¶66 Steven prayed for relief that included a declaration that all estate planning documents executed in 2009 are invalid; that assets of his parents' estate be returned, except for payment of debt, taxes and administrative expenses; that trust property be returned pursuant to Wis. Stat. § 701.0604 (2017-18);[9] and a judgment issued against Susan, James and Terry in an amount to be determined at trial that is sufficient to award him a one-quarter interest in his parents' estate.

¶67 The circuit court granted summary judgment on Steven's claim of undue influence[10] and his request for a constructive

---

[7] Black's Law Dictionary defines "conversion" as "[t]he wrongful possession or disposition of another's property as if it were one's own." Black's Law Dictionary, 381 (9th ed. 2009). It is in that form that "conversion" is alleged against Terry in Steven's complaint.

[8] Complaint, ¶143.

[9] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[10] Whether the claim for undue influence (Steven's second claim) was properly dismissed is not before us. The dismissal was not a final judgment with regard to Susan and James or Steven; therefore, Steven had no right to appeal its dismissal, and he could not bring it to us. Wis. Stat. § 808.03. The majority opinion errs when it relies on Steven's not appealing
(continued)

4

trust. The circuit court also dismissed Terry from the lawsuit, with prejudice. The court of appeals reversed, concluding that Steven had made sufficient allegations, which had not been set aside by Terry, to permit the remedy of constructive trust to be applied against property held by Susan, James and Terry if Steven prevailed at trial.[11]

## II. DISCUSSION

¶68 The majority opinion gets mired down in deciding whether constructive trust is a claim or a remedy. It concludes that constructive trust is a remedy, a conclusion with which I agree. However, that determination is not the question on which the outcome of Steven's allegations against Terry turns. Rather, a constructive trust is an appropriate remedy if Susan, James and Terry have converted property obtained from their parents' estate that would have been devised to Steven but for wrongful influence over Donald and Betty Lou.

## A. Standard of Review

¶69 Steven seeks the equitable remedy of a constructive trust. Whether to impose a constructive trust is a two-step process. Sulzer v. Diedrich, 2003 WI 90, ¶16, 263 Wis. 2d 496, 664 N.W.2d 641. In the first step, we independently review

---

the dismissal of his claim for undue influence and states that the "only remaining cause of action" is the claim of intentional interference with expected inheritance. Majority op., ¶29.

[11] Tikalsky v. Stevens, No. 2017AP170, ¶16, unpublished slip op. (Wis. Ct. App. May 30, 2018).

5

whether a constructive trust could be imposed on property of the defendants.  Id.

¶70  We also independently review the court of appeals' reversal of the circuit court's summary judgment dismissing Terry, while benefitting from discussions of the court of appeals and the circuit court.  Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶15, 291 Wis. 2d 283, 717 N.W.2d 17.

B.  Constructive Trust

¶71  A constructive trust could be imposed if Steven proves that the wrongful influences of Susan and James caused the division of his parents' estate into three, rather than four shares and that Susan, James and Terry each received property that they converted to their own use that in equity should have been devised to him.  Wilharms v. Wilharms, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980).

¶72  A constructive trust is an equitable remedy that a court may impose to prevent the retention of property that was obtained by fraud or by the abuse of a confidential relationship.  Ross v. Specialty Risk Consultants, Inc., 2000 WI App 258, ¶13, 240 Wis. 2d 23, 621 N.W.2d 669.  "In the constructive trust case, the defendant has legal rights in something that in good conscience belongs to the plaintiff." Id., ¶14 (citing 1 Dan B. Dobbs, Law of Remedies § 4.3(1), at 587-88 (2d ed. 1993)).  "It is not necessary that the person against whom the constructive trust is to be imposed be the wrongdoer or know of wrongdoing initially."  Ross, 240 Wis. 2d 23, ¶15.  Rather, a constructive trust will in equity follow the

6

property or the proceeds from the property that was obtained by wrongful means.  Id., ¶16.

¶73 The complaint alleges that "[t]he funds that constituted a one-quarter share in Donald and Betty Lou's joint estate plan and were converted from Steven to the defendants were at all times after the conversion held by the defendants in constructive trust for Steven."[12]  "[A] complaint states a claim in conversion when it alleges that the plaintiff is 'entitled to immediate possession' of a 'chattel' over which the defendant had wrongfully retained dominion or control."  Methodist Manor of Waukesha, Inc. v. Martin, 2002 WI App 130, ¶7, 255 Wis. 2d 707, 647 N.W.2d 409.  "An action for conversion is bottomed upon a tortious interference with possessory rights."  Id.

¶74 Steven alleges that the wrongful conduct of Susan and James resulted in invalid estate planning documents for Donald and Betty Lou, thereby permitting Susan, James and Terry to convert to their own use property, which absent Susan's and James' wrongful conduct, would have been his.  If Steven prevails at trial, a constructive trust is an appropriate remedy to impose on property that Terry possessed and converted to her own use, just as it is for property Susan and James possessed and converted.  Furthermore, even though imposing a constructive trust on property held by an innocent recipient may require "[a]dditional factors," abuse of a confidential relationship is such a factor.  Prince v. Bryant, 87 Wis. 2d 662, 667, 275

---

[12] Complaint, ¶143.

7

N.W.2d 676 (1979). Steven alleges abuse of parent-child relationships, certainly they are confidential relationships.

## C. Summary Judgment

¶75 Terry was granted summary judgment of dismissal, with prejudice, which the court of appeals reversed. When reviewing summary judgment, Wis. Stat. § 802.08(2) is our guide. We apply the same methodology as the circuit court and court of appeals. Linden v. Cascade Stone Co., Inc., 2005 WI 113, ¶5, 283 Wis. 2d 606, 699 N.W.2d 189. We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. Ande v. Rock, 2002 WI App 136, ¶8, 256 Wis. 2d 365, 647 N.W.2d 265. The label of a claim is not determinative; it is the factual allegations that drive whether the complaint states a claim for relief. Strid v. Converse, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983). If the complaint and answer join issue, we examine the moving party's evidentiary submissions to determine whether they establish a prima facie case for summary judgment on some or all of the issues joined by answer. Ande, 256 Wis. 2d 365, ¶8. If they do, we consider the evidentiary submissions in opposition to summary judgment to determine whether there are issues of material fact that require a trial. Hoida, 291 Wis. 2d 283, ¶15. Summary judgment is appropriate only when there are no issues of material fact. Linden, 283 Wis. 2d 606, ¶5.

¶76 In the matter before us, the allegations in the complaint state a claim for wrongful possession and conversion

8

of property by Terry on which relief can be granted, and the answers join issues of fact and of law. Methodist Manor, 255 Wis. 2d 707, ¶7. I do not discuss all the claims because only Terry has been dismissed from the lawsuit.

¶77 Steven's claims against Terry are that she obtained possession of property from Donald and Betty Lou, some of which should have belonged to him, and thereby benefitted from the tortious acts of Susan and James. Stated otherwise, Steven claims Terry converted property to her own use that should have been devised to him. Although Steven's allegations could have been more particularized, they give fair notice of the gravamen of his claims against Terry. As we have explained in regard to wrongful conversion, "[t]he gravamen of the action is the wrongful conversion, to which the possession is matter of inducement. The action does not rest upon the fraudulent nature of the possession, but upon the subsequent tortious conversion." Kalckhoff v. Zoehrlaut, 40 Wis. 427, 430-31 (1876). Therefore, if one is in possession of property which in equity should belong to another and the possessor puts that property to his or her own use, the possessor has converted property of another. Id.

¶78 Although Terry's answer denies the factual allegations and legal claims made in Steven's complaint, she makes no evidentiary offer of proof by affidavit or otherwise sufficient to show a prima facie case for summary judgment dismissing Steven's claim against her for possession and subsequent

9

conversion of property that should have belonged to him.[13] Therefore, she has made no evidentiary showing that if Steven is able to prove the factual allegations in his complaint, that a constructive trust is not an equitable remedy that should attach to some of the property she received from Donald and Betty Lou. Wilharms, 93 Wis. 2d at 678-79.

¶79 One also could argue that Terry is an indispensable party to this action pursuant to Wis. Stat. § 803.03(1)(b).[14] To explain further, Terry was dismissed with prejudice. Therefore, if that judgment stands and Steven prevails at trial, the court may be without power to affect the property Terry received from her parents; and therefore, Susan's and James' property will be subject to recovery for the full amount of Steven's one-third share, while Terry's property will not be affected by the final

---

[13] The majority opinion mistakenly concludes that "Steven voluntarily dismissed" his allegations of wrongful possession that led to conversion of the property. Majority op., ¶35. That never happened. Steven's dismissal of his claim of unjust enrichment against Terry does not negate all the factual allegations in the complaint or the affidavits that Steven submitted in opposition to Susan's, James' and Terry's motions for summary judgment.

[14] Wisconsin Stat. § 803.03(1)(b)2. provides: "PERSONS TO BE JOINED IF FEASIBLE. A person who is subject to service of process shall be joined as a party in the action if: . . . .

(b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: . . . .

2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

10

judgment on Steven's claims.[15] No party has raised § 803.03(1)(b)2. so I go no further with it except to note its interest.

¶80 The majority opinion errs because it does not complete the requisite analysis for summary judgment, and in so doing repeats the error of the circuit court. For example, the majority opinion relies on a circuit court's finding of fact that "the defendants had nothing to do with the 'orchestration and preparation' of the Tikalskys' estate planning documents."[16] That factual determination was erroneously made on a motion for summary judgment. Summary judgment is appropriate only when there are no disputes of material fact. Linden, 283 Wis. 2d 606, ¶5. All one has to do is review the record to learn that Steven had a story to tell that is the opposite of what his sisters and brother told. See Affidavit of J. Steven Tikalsky (R. 47);[17] Affidavit of John R. Pankraz (R 40);[18] Affidavit of

---

[15] All three defendants are represented by the same attorney in this matter. Therefore, if counsel were to prevail on his arguments in favor of Terry and lose at trial, Susan and James could be adversely affected by his representation of Terry.

[16] Majority op., ¶29 n.21.

[17] Steven's affidavit sets out a significant adult sibling rivalry imposed during the course of Donald's cognitive decline, including specific acts by Terry that fed into family discord when Donald and Betty Lou were no longer well equipped to address it. He describes repeated acts of his siblings to preclude his access to both Donald and Betty Lou. R. 47.

[18] John R. Pankraz averred that in 2006, it was apparent to him that Donald had suffered a "significant cognitive decline." R. 40, ¶8. He said, "Don Tikalsky then stated 'the kids want me to sue Steven.' The 'kids' referred to Steven Tikalsky's siblings, Terry, Jim and Susan." R. 40, ¶11.

11

E. John Raasch (R. 39).[19]  Summary judgment is not a trial by affidavit, but that is what occurred at the circuit court.

¶81  The court of appeals correctly overturned the circuit court's summary judgment dismissing Terry from this lawsuit. Steven's allegations are sufficient to give fair notice of his claims against Terry and any evidentiary showing that supports her position is controverted by the evidentiary showing Steven made.  Terry should proceed to trial along with Susan and James.

### III.  CONCLUSION

¶82  Because I conclude that Steven has made a sufficient claim against Terry, which if proved would warrant the imposition of a constructive trust on some of the property she received from the estate of Donald and Betty Lou, for which claim Terry did not make an evidentiary prima facie case for dismissal, and for which Steven provided sufficient evidentiary support to create material issues of fact, I would affirm the court of appeals' reversal of the circuit court's summary judgment, and I respectfully dissent from the majority opinion.

---

[19] E. John Raash avers that Steven and his father had a strong relationship for many years that began to falter after Donald retired and his mental health declined.  R. 39.

¶83 ANN WALSH BRADLEY, J.  *(dissenting).*  I agree in part with Chief Justice Roggensack's dissent.  Specifically, I agree that a constructive trust is a remedy, but that this determination is not the question on which this case turns.  <u>See</u> Chief Justice Roggensack's dissent, ¶68.  I further agree that Steven may continue to pursue the remedy of a constructive trust.[1]  However, I do not join Chief Justice Roggensack's dissent because, like the majority opinion, it appears to conflate the imposition of a constructive trust on Terry's property with a claim against Terry herself.[2]

---

[1] As the majority opinion does, I refer to the members of the Tikalsky family by their first names for the sake of clarity.  <u>See</u> majority op., ¶2.

[2] For example, Chief Justice Roggensack's dissent indicates that Steven has claims against Terry that remain.  Specifically, the dissent states, "Steven claims Terry converted property to her own use that should have been devised to him.  Although Steven's allegations could have been more particularized, they give fair notice of the gravamen of his claims against Terry."  Chief Justice Roggensack's dissent, ¶77; <u>see also</u> <u>id.</u>, ¶76 ("In the matter before us, the allegations in the complaint states a claim for wrongful possession and conversion of property by Terry . . . .").  Contrary to this assertion, no causes of action against Terry remain.  What remains is the request for a constructive trust on Terry's property——not a claim against Terry as a party.

Similarly, the majority tethers the imposition of a constructive trust over property in Terry's possession to the existence of a cause of action against Terry herself.  <u>See</u> majority op., ¶¶39-40.  Such a connection is not required by our case law.  <u>See</u> <u>Wilharms v. Wilharms</u>, 93 Wis. 2d 671, 679, 287 N.W.2d 779 (1980) ("It is not necessary that the person against whom the constructive trust is to be imposed be a wrongdoer or know of the wrongdoing initially.  If the other elements for imposing a constructive trust have been satisfied, and the holder of the legal title is not a bona fide purchaser, a constructive trust may be imposed.").

¶84 Rather than focusing on any alleged conversion on Terry's part, I would follow the approach taken by the court of appeals. That is, because the surviving cause of action for intentional interference with expected inheritance "would establish both elements necessary for a constructive trust, these elements remain for further adjudication." Tikalsky v. Stevens, No. 2017AP170, unpublished slip op., ¶16 (Wis. Ct. App. May 30, 2018).[3]

¶85 A constructive trust is an equitable device that will be imposed in limited circumstances only. Wilharms v. Wilharms, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980). In order to impose a constructive trust, two elements must be fulfilled. First, "[t]he legal title must be held by someone who in equity and good conscience should not be entitled to beneficial enjoyment." Id. at 679. Second, "[t]itle must also have been obtained by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct." Id. (citations omitted).

¶86 As the court of appeals determined, "[w]ith respect to the first element of a constructive trust, Steven's allegations and supporting evidence raise material facts tending to show

_____

[3] Unlike the court of appeals, which utilized the cause of action for intentional interference with expected inheritance against Susan and James as a pathway to a constructive trust, Chief Justice Roggensack's dissent bases a potential constructive trust on "a claim for wrongful possession and conversion of property by Terry . . . ." See Chief Justice Roggensack's dissent, ¶76.

that his siblings hold title to property that equity dictates should go to him." Tikalsky, No. 2017AP170, unpublished slip op., ¶14. "If proven, this claim would establish that all three siblings (including Terry) were unjustly enriched by an inheritance that would have gone——at least in part——to Steven." Id. I agree.

¶87 Likewise, sufficient allegations are stated with respect to the second element of a constructive trust. The court of appeals explained:

> As to the second element, Steven's claim for intentional interference is sufficient to potentially establish that title to the inheritance was "obtained by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct." As the circuit court noted, part of Steven's claim for intentional interference was that Susan and James made false statements and "innuendos" to Donald and Betty in an attempt to get the parents to disinherit Steven.

Id., ¶15. Similarly, I agree.

¶88 The fact that Terry is not alleged to have committed any misconduct is irrelevant: "It is not necessary that the person against whom the constructive trust is to be imposed be a wrongdoer or know of the wrongdoing initially. If the other elements for imposing a constructive trust have been satisfied, and the holder of the legal title is not a bona fide purchaser, a constructive trust may be imposed." Wilharms, 93 Wis. 2d at 679. Thus, a constructive trust may be imposed on Terry's property even if there remain no active claims against her personally.

3

¶89 Accordingly, I agree with the court of appeals that "[b]ecause Steven's claim for intentional interference would establish both elements necessary for a constructive trust, these elements remain for further adjudication." Tikalsky, No. 2017AP170, unpublished slip op., ¶16. It correctly observed that Steven may continue to seek a constructive trust against Terry's property if he is able to establish two elements: (1) "that she holds property that 'in equity and good conscience [she] should not be entitled to,'" and (2) "title to that property was 'obtained by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct.'" Id. (citing Wilharms, 93 Wis. 2d at 678-79).

¶90 For the reasons stated above, I respectfully dissent.

¶91 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

4