**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 14, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP2312**

**STATE OF WISCONSIN**

Cir. Ct. No. 2004FA412

**IN COURT OF APPEALS**
**DISTRICT III**

IN RE THE MARRIAGE OF:

MARK EMMETT GILBERT,

JOINT-PETITIONER-APPELLANT,

V.

THERESA NOELLE GILBERT,

JOINT-PETITIONER-RESPONDENT.

APPEAL from an order of the circuit court for St. Croix County: EDWARD F. VLACK III, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1      SEIDL, J.  Mark Gilbert appeals a postdivorce order requiring him to pay $28,117.63 to his former spouse, Theresa Gilbert.[1]  The circuit court ordered the payment be made to Theresa in her role as trustee for a constructive trust the court had previously imposed, as a remedial sanction, on Mark's real estate after finding him in contempt.  Mark argues, for several reasons, that the court erred in ordering the payment.  We reject Mark's arguments and affirm.

## BACKGROUND

¶2      Mark and Theresa filed a joint petition for divorce in December 2004.  In October 2005, the circuit court entered a judgment of divorce that incorporated a marital settlement agreement (MSA) signed by both parties.  The MSA, which was "founded on" the financial disclosures made by each party, required Mark to pay Theresa $1000 per month in child support for the parties' three children, all of whom were minors at the time of divorce.

¶3      In July 2009, Mark filed a motion seeking to revise his child support obligation.  As a result of the proceedings related to Mark's motion, Theresa obtained Mark's 2005 tax return.  That return showed that Mark had a gross income in 2005 of $424,785—substantially higher than the $62,145 of gross income he had reported in a supplemental financial disclosure prior to the divorce.  Consequently, Theresa moved the circuit court to hold Mark in contempt.  She further requested that, as a sanction for Mark's contempt, the court order retroactive modification of Mark's child support obligation.

---

[1] Because the parties share a surname, we will refer to them individually by their first names in this opinion.  Mark, an attorney, is representing himself on appeal.

¶4      The circuit court ultimately found Mark in contempt for failing to report a substantial change in his income after the parties' divorce.  Rather than impose the remedial sanction sought by Theresa, however, the court decided to "craft [its own] sanctions that fit the circumstances."  Namely, after determining that the parties' children were entitled to benefit from the discovery of Mark's unreported income, the court imposed a $119,397 constructive trust on Mark's real estate.  The court stated that "[t]his constructive trust shall be for the benefit of the children's post high school education, until the youngest child reaches the age of 25, the trustee being [Theresa]."

¶5      Mark appealed the circuit court's contempt order.  We affirmed in an unpublished, one-judge opinion.  *See **Gilbert v. Gilbert***, No. 2011AP1905, unpublished slip op. (WI App Mar. 6, 2012) (***Gilbert I***).  We concluded, in relevant part, that the court properly found Mark in contempt and that the court's imposition of a constructive trust on Mark's real estate for the benefit of his children was permissible under WIS. STAT. § 785.04(1)(e) (2009-10).[2]  ***Id.***, ¶¶15, 33.

¶6      Following our decision, Theresa filed a "motion for entry of judgment."  In support, she stated that the "basis for the motion is for enforcement of the constructive trust on Mark Gilbert's real estate."  The circuit court denied this motion in 2013, after concluding that, in essence, it had been filed prematurely.  The court explained:

> [T]he constructive trust was established for the benefit of
> the three minor children and was to be utilized to fund their

---

[2] All future references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

post high school educations. The constructive trust was not a pot of gold meant to benefit [Theresa]. Rather, it was meant to benefit the three minor children and ensure that they would have to pay little or nothing for their post high school education. The oldest child … just turned eighteen and this Court imagines that the timing of [Theresa's] motion is not a coincidence as college plans are presumably right around the corner. As tuition, room and board, and other college expenses become due, this Court reminds [Mark] that unless covered by scholarships or grants that do not have to be repaid, he is responsible for those expenses, up to and including the total of $119,397, pursuant to the operation of the constructive trust. Contrary to [Mark's] assertion, this Court has not lost jurisdiction over the constructive trust and the ability to enforce it as an equitable lien.

¶7      In November 2016, Theresa again moved the circuit court to find Mark in contempt, alleging that he was refusing to contribute toward their children's college expenses. The court denied this motion for "virtually the same reason" it denied Theresa's earlier motion for entry of judgment—"because *at that time* [i.e., November 2016] … there was no order ordering [Mark] to pay anything."

¶8      Theresa subsequently filed a "motion to modify constructive trust." Again, she based her motion on Mark's refusal to pay for the children's college expenses. In response, the circuit court entered an order on February 12, 2018, that required Theresa to provide "an itemized accounting of all amounts for post high school expenses up to March 1, 2018, that she asserts should have been paid by [Mark]." The court further ordered that "on or before March 31, 2018, [Mark] shall pay the remaining amounts owed for each child, or, in the alternative, provide to [Theresa] by March 31, 2018 reasons why any post high school education was not paid."

¶9    On February 28, 2018, Theresa provided Mark with an itemized accounting that detailed $28,117.63 worth of their children's unpaid college expenses. Mark refused to pay any of these expenses, and he informed Theresa that "I did not pay the adult expenses referenced in the material because they are not owed." As a result, Theresa once again moved the circuit court to find Mark in contempt.

¶10    Following a hearing on this latest contempt motion, the circuit court entered a decision on November 12, 2018, in which the court ordered Mark to pay Theresa "as trustee, the sum of $28,117.63." The court reasoned that Theresa had "satisfied this Court that the expenses set forth … are post high school education expenses not covered by scholarships or grants. This case has now reached the point that post high school education expenses have not been paid by [Mark] and should be paid." In addition, the court ordered Theresa to begin providing "semi-annual itemized accounting" of unpaid college expenses, which Mark would be obligated to pay "until the sum of $119,397.00 has been paid … or until the youngest child reaches the age of 25, whichever occurs first." Mark now appeals.

## DISCUSSION

### I.  Competence

¶11    Mark argues that the circuit court lacked competence to order that he pay Theresa, as trustee, $28,117.63. Competence refers to a court's ability to exercise its subject matter jurisdiction in a particular case. *City of Eau Claire v. Booth*, 2016 WI 65, ¶12, 370 Wis. 2d 595, 882 N.W.2d 738. We independently review questions of competency. *Id.*, ¶6.

5

¶12 Mark advances three separate arguments regarding the circuit court's alleged lack of competence to issue its November 12, 2018 decision and order. We address, and reject, each argument in turn.

¶13 First, Mark contends that "[a]bsent an enforceable agreement [between the parties] to the contrary, a circuit court has no competency to exercise its jurisdiction to compel a parent to pay for post-majority support of adult children." In support of this contention, he relies on *Bliwas v. Bliwas*, 47 Wis. 2d 635, 638, 178 N.W.2d 35 (1970), in which our supreme court stated that "in the absence of stipulation at least, the trial court's jurisdiction to make provisions for the care, custody, maintenance and education of children of the parties is limited to minor children."

¶14 Mark's reliance on *Bliwas* is misplaced. As our supreme court has explained, our legislature "significantly revised the family law code" in 1977, well after the *Bliwas* decision. *See Griffin v. Reeve*, 141 Wis. 2d 699, 704, 416 N.W.2d 612 (1987). In light of that revision, the *Griffin* court held that "enforcing support payments after the child reaches majority through proceedings in contempt" lies within "the court's power."[3] *Id.* at 708. Mark's argument that the court lacked competence to enforce its remedial sanction against him, simply because his children are no longer minors, therefore fails.

¶15 Second, Mark argues that because the circuit court's July 2011 order was "an unambiguous final order," the court had "no authority … to alter it and

---

[3] As we stated in *Gilbert v. Gilbert*, No. 2011AP1905, unpublished slip op. ¶30 (WI App Mar. 6, 2012) (*Gilbert I*), the circuit court's remedial sanction against Mark was imposed due to his failure to report a "substantial change in income," which "shielded Mark from a child support modification motion and deprived Theresa of her ability to request modification."

increase sanctions, 8 years after the fact." We agree with Theresa that Mark's argument in this regard rests on a fundamental misunderstanding of the nature of, and the purpose for, the court's remedial sanction.

¶16    To explain, as the plain language of the original sanction made clear, the circuit court imposed the constructive trust on Mark's real estate "for the benefit of the children's post high school education." Mark's position—i.e., that he has purged himself of any contempt through the court's imposition of the constructive trust on his real estate, and that the court has no authority to "alter" its sanction—wholly ignores the purpose of the sanction (i.e., to secure payment for the children's post high school education).[4]

¶17    This oversight is no small matter, as "violations of a court order after a finding of contempt may constitute a continuing contempt, and the circuit court has statutory authority to issue an 'order designed to ensure compliance with a prior order of the court.'" *Christensen v. Sullivan*, 2009 WI 87, ¶74 n.16, 320 Wis. 2d 76, 768 N.W.2d 798. When Mark refused to make payments for the children's post high school education because—in his own words—"they [were] not owed," the circuit court had a sufficient basis to conclude that Mark was no longer complying with: (1) the explicit purpose of the remedial sanction; and (2) the February 2018 order stating he was to pay the itemized expenses supplied

---

[4] Mark's position that he has purged himself of any contempt relies on a footnote from our opinion in *Gilbert I*, which he contends shows that we "agreed that the sanction and alternative purge condition were one and the same." We disagree. That footnote (which we inserted in our discussion of whether Mark's contempt was continuing for purposes of the imposition of remedial sanctions) merely stated that "*Frisch v. Henrichs*, 2007 WI 102, 304 Wis. 2d 1, ¶¶61-63, 736 N.W.2d 85, also held that a purge condition and a remedial sanction could be one and the same." *Gilbert I*, No. 2011AP1905, ¶30 n.11. Because we did not even discuss, much less hold, whether Mark's contempt had, in fact, been purged by the imposition of the constructive trust, we reject his argument.

by Theresa or, in the alternative, to provide an explanation for why he could not pay. As such, the court had the authority to issue its November 2018 decision and order.

¶18 Third, Mark argues that Theresa is judicially estopped from arguing that the circuit court's remedial sanction "should be changed to include personal payments or that the contempt has not been purged."[5] Judicial estoppel is a doctrine that prevents a party from adopting inconsistent positions in legal proceedings. *Olson v. Darlington Mut. Ins. Co.*, 2006 WI App 204, ¶4, 296 Wis. 2d 716, 723 N.W.2d 713. There are three elements that must be met for a party to successfully invoke the doctrine: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issues must be the same in both proceedings; and (3) the party against whom the doctrine is to be applied must have convinced the court in the earlier proceeding to adopt its position. *Id.*

¶19 In support of his judicial estoppel argument, Mark points to two statements Theresa made in briefing during *Gilbert I.* Specifically, he contends that Theresa convinced us to adopt her positions that the imposition of the constructive trust purged Mark's contempt and that the remedial sanction did not "include personal payments."

¶20 Theresa responds that Mark forfeited any judicial estoppel argument by failing to raise it during the extensive litigation that took place in the circuit

---

[5] Although Mark's brief-in-chief frames his judicial estoppel argument as a challenge to the circuit court's competence, he fails to explain how the doctrine—if properly invoked—would affect a court's ability to exercise its jurisdiction in a given case. Nonetheless, we have chosen to address the argument in this section, given Mark's presentation of the issue and in light of the fact that we deem him to have forfeited the argument.

court following our decision in *Gilbert I.* Mark fails to respond to this argument in his reply brief, nor does his brief-in-chief provide any record citation showing that he raised a judicial estoppel argument below. We therefore deem him to have conceded Theresa's forfeiture argument.[6] *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (unrefuted arguments may be deemed conceded).

## II. "New" Sanction

¶21 Mark next contends that the circuit court failed to follow the procedures set forth in WIS. STAT. § 785.04(1) when it issued its November 2018 decision and order. Whether a court followed proper procedures in exercising its contempt power is a question of law that we review de novo. *Evans v. Luebke*, 2003 WI App 207, ¶16, 267 Wis. 2d 596, 671 N.W.2d 304.

¶22 Mark's assertion that the circuit court failed to follow the procedures set forth in WIS. STAT. § 785.04(1) rests on the premise that the court's November 2018 decision and order imposed a "new sanction" on him that, absent a contemporaneous finding of contempt, was not statutorily authorized. That premise, however, is unsound. Contrary to Mark's insistence, the court did not create any new "obligation" when it issued its November 2018 decision. Instead, as the court's decision made clear, Mark's payments for the children's post high

---

[6] Even if we were to ignore Mark's forfeiture, we would conclude that his argument fails on its merits. Although Mark attempts to cast Theresa's appellate arguments in *Gilbert I* as somehow conceding that he would not have to make personal payments for the children's post high school education, we agree with Theresa that she has repeatedly and consistently argued just the opposite. That is, Theresa has argued Mark is obligated to pay $119,397 for the children's college expenses as they come due, regardless of which collection mechanism the circuit court chose to effect compliance with its order.

school education will not exceed $119,397.00—i.e., the value of the constructive trust.

¶23 As such, Mark does not face any new or increased obligation, because every payment he makes necessarily reduces the value of the constructive trust originally imposed by the circuit court. Indeed, Mark appears to acknowledge this very fact in his brief-in-chief, as he asserts that he has "relied on the words of the original order of 7/6/11 in making substantial voluntary pre-payments toward a reduction in the constructive trust on real estate."[7] Consequently, we reject Mark's contention that the court imposed a "new sanction" on him not authorized by WIS. STAT. § 785.04(1).

¶24 In a related argument, Mark contends that the circuit court's November 2018 decision and order "relied upon inaccurate dicta language" contained in the court's 2013 order denying Theresa's "motion for entry of judgment." As indicated, the court stated in that 2013 order that as "college expenses become due, this Court reminds [Mark] that unless covered by scholarships or grants that do not have to be repaid, he is responsible for those expenses, up to and including the total of $119,397, pursuant to the operation of the constructive trust."

¶25 The problem with Mark's argument is that it presupposes that this alleged "dicta" is in conflict with the circuit court's original remedial sanction. For reasons explained, however, we perceive none of the court's actions following

---

[7] In support of this statement, Mark provides a citation to an affidavit in which he avers that he has "paid in excess of $30,000.00 for the benefit of the adult children's post high school education related expenses." Whether he actually made these payments, however, has apparently not been decided by the circuit court and is not at issue in this appeal.

*Gilbert I* as conflicting with the language of the original sanction—which explicitly stated the constructive trust was established "for the benefit of the children's post high school education." As such, the court's actions in 2018 were a valid exercise of its authority to "ensure compliance with a prior order of the court"—that is, the original sanction. *See Christensen*, 320 Wis. 2d 76, ¶74 n.16. Mark's argument therefore fails.

### III. Claim and issue preclusion

¶26 Mark next argues that "issue and/or claim preclusion bars the circuit court from re-deciding claims and issues that were previously heard and decided in Mark's favor, without appeal." Under the doctrine of claim preclusion, a final judgment is conclusive in all subsequent actions between the same parties or their privies involving all matters litigated, and all matters that could have been litigated, in the proceeding leading to the judgment. *State v. Parrish*, 2002 WI App 263, ¶14, 258 Wis. 2d 521, 654 N.W.2d 273. Under the doctrine of issue preclusion, a final judgment bars the relitigation of a factual or legal issue that actually was litigated and decided in the earlier action. *Id.* Whether either preclusion doctrine applies to bar an action is a legal issue we review de novo. *Id.*

¶27 To support his preclusion arguments, Mark relies on two decisions the circuit court made. He asserts that in these two decisions, the court concluded that it could not order him to make personal payments to Theresa—for the same expenses it later did order him to pay—because the court lacked the authority to do so. Theresa responds that in the decisions at issue, the court merely determined that ordering Mark to make any payments would be premature, as Mark had not failed to pay for any post high school education expenses.

¶28    We agree with Theresa.  In the first decision—the 2013 decision denying Theresa's motion for judgment—the circuit court explained it would not order Mark to make any payments to Theresa because "*[a]t this point,* it appears that the oldest child is a senior in high school and has not yet incurred any post high school education expenses." (Emphasis added.)  In the second decision—the court's denial of Theresa's 2016 motion for contempt[8]—the court stated that it would not order Mark make any payments for "virtually the same reason … because *at that time* [i.e., November 2016] … there was no order ordering [Mark] to pay anything."

¶29    These decisions clearly reflect that the circuit court's rationale for declining to order Mark to make any payments for the children's post high school education expenses was that such an order would be premature—not because the court lacked the authority to do so.  Consequently, we reject Mark's argument that either issue preclusion or claim preclusion bars the court's decision.

## IV.  Additional arguments

¶30    We briefly address two additional arguments raised by Mark.  First, he makes a cursory argument that some of the expenses the circuit court ordered him to pay in November 2018 were "general living expenses [i.e., food, parking and rent] unrelated to post-high school education."  Based on this assertion, he appears to argue that the court erroneously exercised its discretion when it

---

[8] Mark makes much of the fact that this decision was issued in May 2018 (i.e., six months before the November 2018 order at issue in this appeal, and three months after the February 2018 order which required Mark to pay the itemized expenses provided by Theresa). As the plain language of the May 2018 order shows, however, the circuit court clearly based its denial of Theresa's motion by looking at the state of affairs between the parties on the date it was filed—i.e., November 11, 2016.

concluded that "[Theresa] has satisfied this Court that the expenses set forth in the 69 page Exhibit #6 are post high school education expenses not covered by scholarships or grants." However, Mark cites no legal authority and develops no reasoned argument explaining why the court's conclusion was in error. As such, we decline to address this argument further. *See* *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

¶31 Second, Mark argues that our supreme court's recent decision in *Tikalsky v. Friedman*, 2019 WI 56, 386 Wis. 2d 757, 928 N.W.2d 502, *reconsideration denied*, 2019 WI 89, 388 Wis. 2d 656, 933 N.W.2d 32, "is dispositive" in that it establishes that a "constructive trust on real estate (as exists in this case) cannot float from one asset to another."[9] Theresa responds that a "circuit court's authority to fashion a comprehensive equitable remedy which may include the use of a constructive trust is well established in Wisconsin law [and] *Tikalsky* doesn't change this."

¶32 Again, we agree with Theresa's position. The issue addressed by the *Tikalsky* court was whether a constructive trust is properly characterized as a cause of action or as a remedy. *Id.*, ¶1. In deciding that it is a remedy, and not a cause of action, Mark is correct that our supreme court stated that "[o]nce a constructive trust exists, it travels with the property to which it attaches." *Id.*, ¶24. Nonetheless, we are unpersuaded that this out-of-context statement is "dispositive" of any issue in this appeal.

---

[9] Our supreme court issued this decision after Mark and Theresa submitted their initial briefs. Consequently, the parties addressed the decision in supplemental letter briefs.

¶33    As explained above, the fundamental problem with Mark's argument—both in this specific context and throughout his briefing—is that he fails to grasp the significance of the fact that the circuit court's July 2011 order was an exercise of the court's contempt power.  That power exists "to provide the court with a mechanism, or toolbox, to effect compliance with court orders." *Frisch v. Henrichs*, 2007 WI 102, ¶82, 304 Wis. 2d 1, 736 N.W.2d 85.

¶34    Viewed in that light, the *Tikalsky* court's explanation of the equitable nature of a constructive trust supports the court's use of that remedy here: "A constructive trust is what arises when the defendant violates an antecedent duty that will leave him unjustly enriched. … The constructive trust exists for the purpose of providing a remedy when he fails to do so." *Tikalsky*, 386 Wis. 2d 757, ¶20.  For all the reasons set forth above, we conclude the mere fact that the circuit court decided to modify its sanction when Mark refused to make the payments for the children's post high school education—as the court's original sanction order required him to do—does not provide any basis for reversal.

> *By the Court.*—Order affirmed.

> Not recommended for publication in the official reports.